# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00500-CV

### Sharon A. O=Reilly, Appellant

### v.

### C. Vince Wiseman, M.D. and Austin Radiological Association, P.A., Appellees

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. GN103100, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## O P I N I O N

This is a medical-malpractice action involving a misdiagnosis of breast cancer. Appellees, C. Vince Wiseman, M.D., and Austin Radiological Association, P.A. (A Dr. Wiseman@), were sued by appellant, Sharon A. O=Reilly, for malpractice arising from Dr. Wiseman=s examination of Ms. O=Reilly=s mammography. Dr. Wiseman moved for traditional summary judgment, asserting that Ms. O=Reilly=s claim was barred by the two-year statute of limitations on medical-malpractice actions. *See* Tex. Rev. Civ. Stat. Ann. art. 4590i (West Supp. 2003). The trial court granted Dr. Wiseman=s motion. Ms. O=Reilly appeals by one issue, claiming that the trial court erroneously failed to allow her a reasonable time to discover her claim and take steps to protect her rights and that the application of the statute of limitations in this instance

is a violation of the open- courts provision of the Texas Constitution. *See* Tex. Const. Art. I, ' 13 (AAll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.@). For the reasons stated below, we will affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 20, 1999, Ms. O=Reilly underwent a routine mammogram at Austin Regional Clinic with interpretation by C. Vince Wiseman, M.D. The report stated there was no suspicious mass of malignant calcifications and was reported as negative. On June 9, 2000, Ms. O=Reilly complained to her family-practice physician, Janet Jewell, M.D., of redness in her left breast. Dr. Jewell ordered a bi-lateral screening mammography which was interpreted by Dr. Larry Hill as benign. Routine screening in one year was recommended. On November 27, Ms. O=Reilly again underwent a screening mammography of the left breast.[1] This was read as unchanged from the June 9 screening. On December 4, Dr. Jewell determined that the left breast was abnormal and referred her to another surgeon, Dr. Mike Regan. On December 27, Ms. O=Reilly was diagnosed with breast cancer and Dr. Regan performed a modified radical mastectomy of the left breast. Ms. O=Reilly commenced chemotherapy treatment in January 2001. In addition to chemotherapy, she underwent radiotherapy and tamoxifen therapy.

---

[1] The record does not indicate what prompted Ms. O=Reilly to undergo additional screening prior to the one-year recommendation following the June 9, 2000 mammogram.

2

Ms. O=Reilly first contacted an attorney on May 4, 2001, to investigate whether she had a possible claim relating to a misreading of the June 9, 2000 screening. At that time, Ms. O=Reilly did not consider that the earlier April 20, 1999 screening may also have been misread by Dr. Wiseman. Shortly thereafter, Ms. O=Reilly=s attorney requested medical records from all her medical providers in order to investigate the claim. Following a five-month delay in obtaining the relevant medical records from Austin Regional Clinic and Austin Radiological Association, P.A.,[2] Ms. O=Reilly=s previous mammograms were evaluated by an expert hired by her attorney. According to the expert, the April 20, 1999 mammogram contained information regarding Ms. O=Reilly=s breast cancer. He stated that the failure to observe the abnormalities in the screenings fell below the requisite standard of care for physicians in Dr. Wiseman=s field. Ms. O=Reilly subsequently filed her cause of action on September 21, 2001.

### STANDARD OF REVIEW

The standard of review for a traditional summary judgment is well established: the movant must show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant=s favor. *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). A

---

[2] Ms. O=Reilly=s attorney first attempted to obtain copies of her mammograms on May 17, 2001. They were received on August 31, 2001.

movant must establish all elements of the cause of action as a matter of law. Tex. R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). A defendant moving for summary judgment on a statute of limitations affirmative defense must prove conclusively that defense=s elements. *Veliscol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex. 1997). The propriety of a summary judgment is a question of law; therefore, we review the trial court=s decision *de novo. Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994).

## DISCUSSION

We are called upon to decide whether the open-courts provision of the Texas Constitution invalidates the two-year statute of limitations of the Medical Liability and Insurance Improvement Act (the Act) as applied to a particular patient. *See* Tex. Rev. Civ. Stat. Ann. art 4590i, ' 10.01. For the open-courts doctrine to invalidate a statute of limitations, a showing must be made that due to the nature of the claim it was impossible or exceedingly difficult to discover the alleged wrong and bring suit within the two-year period. *See Shah v. Moss*, 67 S.W.3d 836, 846 (Tex. 2001); *Neagle v. Nelson*, 685 S.W.2d 11 (Tex. 1985); *Nelson v. Krusen*, 678 S.W.2d 918 (Tex. 1984); *Sax v. Votteler*, 648 S.W.2d 661 (Tex. 1983). Ms. O=Reilly claims that she could not have discovered the wrong forming the basis of her malpractice suit until she had an opportunity to review her April 1999 mammogram, which was not received until after the two-year statute of limitations had passed.

Application of the open-courts provision to the two-year statute of limitations of the Act has not been a model of clarity. *See Lucas v. United States*, 757 S.W.2d 687, 716-17 (Tex. 1988) (Phillips, C.J., dissenting). Language in appellate opinions has made it confusing for both lower courts and litigants to

**4**

know with certainty when the open-courts provision applies so as to invalidate the limitation period. *Compare Hellman v. Mateo*, 772 S.W.2d 64, 66 (Tex. 1989) (stating that burden is on defendant to show that plaintiff Ashould have discovered@the cause of action within the two-year period), *and Gandara v. Slade*, 832 S.W.2d 164, 166 (Tex. App.CAustin 1992, no writ) (same), *with Shah*, 67 S.W.3d at 846 (stating that burden is on plaintiff to show that she did not have Aa reasonable opportunity to discover the alleged wrong@ within the two-year period). *See also Batten v. Hunt*, 18 S.W.3d 235, 238-39 (Tex. App.CAustin 1999, pet. denied) (applying the open-courts provision to a medical malpractice claim without declaring on which party the burden of proof falls). In an attempt to bring some clarity to this confusing area of the law, we will examine the development and application of the open-courts provision in order to determine the proper test for its application to the statute of limitations. We begin by examining the Act itself. We then examine the supreme court=s development of the open-courts provision as applied to the statute of limitations. After examining the court=s opinions, we will apply the test for finding an open-courts violation to Ms. O=Reilly=s claim.

### The Medical Liability and Insurance Improvement Act

The Act establishes the following statute of limitations in section 10.01, which provides, in relevant part, that

> notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed.

Tex. Rev. Civ. Stat. Ann. art. 4590i, ' 10.01. Section 10.01 re-enacted the previous statute of limitations applicable to malpractice claims first established in 1975. Joseph P. Witherspoon, *Constitutionality of the Texas Statute Limiting Liability for Medical Malpractice*, 10 Tex. Tech L. Rev. 419, 421 (1979). The legislature rejected the Professional Liability Study Commission-s[3] recommendation to restore the Adiscovery rule,@ applicable before 1975, which would begin the running of the limitations period from the time the patient knew or should have known of an alleged injury.[4] *Id.* Instead, the legislature enacted the two-year limitation, Awithout the allowance of any of the court-developed exceptions.@ *Id.*

Section 10.01 measures the limitations period for medical negligence claims from one of three dates: (1) the occurrence of the breach or tort, (2) the last date of the relevant course of treatment, or (3) the last date of the relevant hospitalization. Tex. Rev. Civ. Stat. Ann. art. 4590i, ' 10.01; *Shah*, 67

---

[3] The Professional Liability Study Commission was established by the legislature two years prior to the enactment of the Medical Liability and Insurance Improvement Act (the Act) to address the national problem of maintaining affordable and comprehensive health care in response to increasing insurance costs for health care providers in the 1970s. *See* Joseph P. Witherspoon, *Constitutionality of the Texas Statute Limiting Liability for Medical Malpractice*, 10 Tex. Tech L. Rev. 419, 421 (1979).

[4] The Study Commission recommended a provision permitting a malpractice claim to be filed within one year from the date the alleged injury was discovered or should have been discovered. Witherspoon, 10 Tex. Tech L. Rev. at 421.

S.W.3d at 841. If the date the alleged tort occurred is ascertainable, limitations must begin on that date and inquiry into the second and third categories is unnecessary. *Shah*, 67 S.W.3d at 841. If the date the alleged tort occurred cannot be ascertained, the last date of treatment or the last date of hospitalization, whichever is relevant, becomes that date for limitations purposes. *Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex. 1987).

*Development of the Open-courts Provision*

The open-courts provision was first applied to the limitations provision of the Act in a trilogy of cases: *Sax*, 648 S.W.2d 661; *Nelson*, 678 S.W.2d 918; and *Neagle*, 685 S.W.2d 11. In *Sax*, the court set out the test to be employed in future open-courts analysis: Athe right to bring a well-established common law cause of action cannot be effectively abrogated by the legislature absent a showing that the legislative bases for the statute outweighs the denial of the constitutionally-guaranteed right of redress.@*Sax*, 648 S.W.2d at 666. In analyzing this balancing test, the court set forth two criteria that must be met under the litigant=s right-to-redress prong. AFirst, it must be shown that the litigant has a cognizable common law cause of action that is being restricted. Second, the litigant must show that the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute.@ *Id.* The burden is on the plaintiff to establish a common law cause of action that is being unreasonably or arbitrarily restricted. Once the plaintiff meets this burden, the court must then examine the limitations provision to determine whether the purposes and bases of the statute make this restriction reasonable. Using this formulation, the *Sax* court examined the limitations provision and found that a minor=s right to redress was entirely cut off by the statute before the minor was able to bring suit in his own right. The court found this restriction unreasonable when weighed against the purpose of the statute to limit the length of time that insureds would be exposed to potential liability. *Id.* at 667.

The year after *Sax* was decided, the court considered a limitations provision restricting a claim for wrongful birth in *Nelson*. The court found that the statute would "operate to bar the parents' cause of action before they knew it existed, even though they did not discover, and could not reasonably have discovered, their injury within two years." *Nelson*, 678 S.W.2d at 920. There, the court stated that "[t]he common thread of this court's decisions construing the open-courts provision is that the legislature has no power to make a remedy by due course of law contingent on an *impossible condition*." *Id.* at 921 (emphasis added). The *Sax* balancing approach between the purpose and basis of the statute and the extent of the restriction on a litigant's right to redress was adopted to resolve the open-courts challenge. *Id.* at 922. As applied to the Nelsons, the limitations provision "violat[ed] the open-courts provision by cutting off a cause of action before the party knows, or reasonably should know, that he is injured." *Id.* The court held that the legislative basis for the limitations provision was "legitimate." *Id.* However, the nature of the Nelson's claim made it unreasonable to bring suit within two years because it "would require the Nelsons to do the impossible—to sue before they had any reason to know they should sue." *Id.* at 923. The court set forth the test which has been used to analyze the second prong of the *Sax* balancing approach—the extent to which a litigant's constitutionally protected right to redress is restricted. A limitations provision is unconstitutional under the open-courts provision if it cuts off the right to sue before there is "a reasonable opportunity to discover the wrong and bring suit." *Id.*

The third case in the development of the open-courts doctrine was *Neagle*, a brief opinion applying the doctrine when a surgical sponge left in the abdomen of the plaintiff was discovered more than two years later. The court assumed that it was impossible for Neagle to discover the injury until more than

two years after the surgery. *Neagle*, 685 S.W.2d at 12. AThe open-courts provision . . . protects a citizen, such as Neagle, from legislative acts that abridge his right to sue before he has a reasonable opportunity to discover the wrong and bring suit.@ *Id.* The opinion failed to mention the balancing test formulated in *Sax*; however, the court cited *Sax* and *Nelson* with approval as declaring the limitations unconstitutional as applied based on the open-courts provision.

From these three cases, the court established the proper test to employ when analyzing the limitations period under the open-courts provision. As the court noted, the decisions in *Nelson* and *Neagle* were Apremised on the fact that it was *not possible* for the parties to discover the injury within the two-year period.@ *Morrison v. Chan*, 699 S.W.2d 205, 207 (Tex. 1985) (emphasis added).[5] The open-courts doctrine is premised on the notion that Athe legislature has no power to make a remedy by due course of law contingent on an *impossible condition*.@ *Id.* (citing *Nelson*, 678 S.W.2d at 921) (emphasis added).

---

[5] The court in *Morrison* held that the language of section 10.01, the legislative history, and the language in *Nelson* make it clear that section 10.01 was intended to abolish the discovery rule and require suit to be brought within a two-year period from the time of injury, not the time of discovery of injury. *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex. 1985).

Ms. O=Reilly relies heavily on *Hellman v. Mateo*,[6] a case strikingly similar to the present one.[7] 772 S.W.2d 64. In *Hellman*, the court=s analysis of the open-courts provision as applied to section 10.01 actually reverted back to the discovery rule that had been discarded by *Morrison*. *Id*. at 66 (A[I]n order to challenge the constitutionality of article 4590i, as applied to her, Hellman must allege that application of the two-year limitation cut off her cause of action before she knew or *should have known* that a cause of action existed.@) (emphasis added). The court stated that the burden of proof concerning when Ms. Hellman discovered or should have discovered her cause of action fell on the defendant, Dr. Mateo. *Id*. Moreover, because Ms. Hellman stated that she had no reason to question the accuracy of Dr. Mateo=s biopsy report until after the two-year period had passed, in addition to the assertion that conclusive information about Dr. Mateo=s misdiagnosis was not obtained until two months after the limitations period had run, Hellman was held to have raised a question of fact regarding her knowledge of her injury. *Id.*

Without citing *Morrison* or *Neagle*, the court in *Hellman* appeared to be adopting the Adiscovery rule@ discarded in *Morrison*. In fact, one of the three cases cited by *Hellman* for the Ashould-have-known@ proposition expressly used the discovery rule to invalidate the application of a limitations period to a medical malpractice plaintiff. *See Conerly v. Morris*, 575 S.W.2d 633, 635 (Tex. Civ.

---

[6] Ms. O=Reilly cites *Hellman* as establishing that the burden is on the defendant to show that there was not a reasonable opportunity to discover the wrong and bring suit within the two-year period. *Hellman v. Mateo*, 772 S.W.2d 64, 65 (Tex. 1989) (per curiam).

[7] Dr. Mateo had misread a pathology report concerning a biopsy of one of Hellman=s lymph nodes. One year and eight months later, Hellman was determined to be in the advanced stages of Hodgkin=s disease. Suit was not filed for another year. *Id*.

App.CHouston [1st Dist.] 1978, writ ref=d n.r.e.).[8]  It is instructive to note, however, that *Hellman* has *never* been cited by the supreme court.  *Morrison*, however, has been cited as recently as 1999 for the proposition that article 4590i, section 10.01 abolishes the discovery rule.  *See Chilkewitz v. Hyson*, 22 S.W.3d 825, 829 (Tex. 1999).

---

[8]  The other two cases cited by *Hellman* were *Sax* and *Nelson*, both decided before *Morrison*. Significantly, no case decided after *Morrison* is cited for the Ashould-have-known@ proposition.

Although in *Nelson* the court used the phrase Ashould have known,@ that language seems to be at odds with the Anot possible@ rationale actually adopted.[9]  Finding that the Nelsons A*could not*@ reasonably have detected their child=s disease because it was masked by the typical clumsiness of a two-year-old, the court analogized their situation to the Aimpossible condition[s]@ and Arequirement[s]@ placed on litigants in prior open-courts cases.  *Nelson*, 678 S.W.2d at 920, 922-23 (emphasis added).  Viewed in light of the language in the rest of the opinion, the court=s use of the phrase Ashould have known@ is restricted by the Aimpossible condition@ doctrine.  *See Lecroy v. Hanlon*, 713 S.W.2d 335, 344 (Tex. 1986) (AThe common thread of this court=s open-courts decisions is that the legislature cannot unreasonably abridge a person=s right to bring a common-law cause of action by making a remedy by due course of law contingent on an impossible condition.@).  In light of these facts, it can reasonably be assumed that *Hellman* was an anomalous result and Ms. O=Reilly=s reliance on it is misplaced.

---

[9]  In discussing the previous cases, *Nelson* states that A[t]hese decisions lead to the conclusion that [section 10.01] as applied here violates the open-courts provision by cutting off a cause of action before the party knows, or *reasonably should know*, that he is injured.@ *Nelson v. Krusen*, 678 S.W.2d 918, 922 (Tex. 1984) (emphasis added).

After *Hellman*, the supreme court repeatedly held that to establish an open-courts violation, a plaintiff must show it was impossible or exceedingly difficult to discover the wrong[10] and bring suit, without mentioning the *Sax* balancing approach. *See Earle v. Ratliffe*, 998 S.W.2d 882, 890 (Tex. 1999) (patient who complained of constant pain to doctor and who had seen television report detailing risks associated with instrumentation implanted in him had Aopportunity to learn of any negligence@prior to two-year period); *Husain v. Khatib*, 964 S.W.2d 918, 919 (Tex. 1998) (failing to mention open-courts provision in holding that if doctor=s date of negligence can be ascertained Athere are no doubts to resolve and limitations must be measured from@ that date); *Jennings v. Burgess*, 917 S.W.2d 790, 794 (Tex. 1995) (plaintiff knew defendant doctor had referred her to general practitioner and not specialist as requested, therefore she had reasonable opportunity to discover her alleged injury of negligent referral and bring suit within the two-year period). The court reemphasized that the open-courts doctrine Ais premised upon the rationale that the legislature has no power to make a remedy by due course of law contingent upon an impossible condition.@ *Diaz v. Westphal*, 941 S.W.2d 96, 100 (Tex. 1997). The validity of the *Sax* balancing test between the

---

[10] We will use the language Aimpossible or exceedingly difficult to discover the wrong@rather than Areasonable opportunity to discover the wrong@in describing what a plaintiff must show in an open-courts challenge. Much of the confusion surrounding these cases is the court=s use of the language Areasonable opportunity to discover the wrong@to describe situations where it is Aimpossible or exceedingly difficult to discover the wrong@ and bring suit within the two-year period. In all three cases which first developed the open-courts provision in terms of the limitations provision of the Act, the plaintiff was in a situation where it would have been impossible to discover the injury and file suit within the two-year period. Moreover, the court has repeatedly emphasized that the Areasonable opportunity@ test is met through a showing that the nature of the claim made it Aimpossible or exceedingly difficult to discover the wrong@or that the plaintiff could not have discovered the wrong and brought suit within the two-year period. *See, e.g.*, *Weiner v. Wasson*, 900 S.W.2d 316, 321 (Tex. 1995) (Stating that an open-courts violation is not found in Acases other than those involving claims that are by their nature exceedingly difficult or impossible to discover.@).

restriction on the litigant=s right to redress and the purpose and basis of the statute remained in question, however, because the court was able to rely on the Aimpossible condition@ to determine that no open-courts violation existed.[11]

The court appears to have resolved the question of the validity of the *Sax* balancing approach with its recent opinion in *Shah*. 67 S.W.3d at 836. In *Shah*, the court expressly held that the *Sax* balancing test must be met in order to determine an open-courts violation, thereby giving credence to the long-forgotten analysis. *Id.* at 842 (A[T]he legislature cannot abrogate the right to bring a well-established common-law claim without showing that the statute=s objectives and purposes outweigh denying the constitutionally guaranteed right of redress.@) (citing *Weiner v. Wasson*, 900 S.W.2d 316, 318 (Tex. 1995), and *Sax*, 648 S.W.2d at 665-66). Also, significantly, the court expressly held that it is the *plaintiff=s* burden to demonstrate Athat he did not have a reasonable opportunity to discover the alleged wrong before the limitations period expired.@ *Id.* at 846. This is in direct conflict with the holding of *Hellman*, where the *defendant* doctor was required to prove that the plaintiff Ashould have known@ of the injury. *Hellman*, 772 S.W.2d at 66.

*Shah* evidences that the two-step analysis articulated in *Sax* is the test to be used to analyze section 10.01 under the open-courts provision. The first step requires the plaintiff to show the extent to

---

[11] The balancing test was mentioned in only one case following *Nelson*. In *Weiner*, the court quoted *Sax* but relied on the Aimpossible condition@ doctrine to invalidate the limitations provision. 900 S.W.2d at 318.

which her right to redress is limited. The plaintiff must show there is a constitutionally guaranteed right to redress for a cognizable, common-law claim that has been unreasonably or arbitrarily restricted when balanced against the purpose and basis of the statute at issue. *Shah*, 67 S.W.3d at 843; *Sax*, 648 S.W.2d at 666. This is evaluated by asking whether it was impossible or exceedingly difficult for the plaintiff to discover the alleged wrong and bring suit within the two-year period. *See Shah*, 67 S.W.3d at 846-47. It is the plaintiff=s burden to show that the nature of the claim was impossible or exceedingly difficult to discover and that she did not or could not have learned of the fact of injury within the two-year period. *Id.* at 846-47; *Weiner*, 900 S.W.2d at 321; *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 357 (Tex. 1990) (noting that discovery of Afact of injury@ is triggering event for limitations period); *see also Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983) (holding that knowledge of Afacts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry . . . is in law equivalent to knowledge of the cause of action@).

Once the plaintiff meets this burden, the court must go on to the second step of the *Sax* analysis and determine whether this restriction on the plaintiff=s right to redress is reasonable when weighed against the bases and purposes of the statute.[12] If the balancing approach weighs in favor of the litigant=s right to redress, the plaintiff has established a prima facie open-courts violation. Once a plaintiff has

---

[12] The bases and purposes of the Act as found by the legislature are set forth in Tex. Rev. Civ. Stat. Ann. art. 4590i, ' 1.02 (West Supp. 2003). The main purposes of the Act were to Aimprove and modify the system by which health care liability claims are determined@ and Areduce excessive frequency and severity of health care liability claims@ Ain a manner that will not unduly restrict a claimant=s right any more than necessary.@ *Id.* ' 1.02(b). *See also Sax v. Votteler*, 648 S.W.2d 66, 67 (Tex. 1983) (finding purpose of the limitations period was to limit length of time that insureds would be exposed to potential liability)

established a prima facie open-courts violation, she must then show that diligence was used to bring suit within a reasonable time following the discovery of injury.[13] *Shah*, 67 S.W.3d at 847. Only if the prima facie open-courts violation has been initially established will the court ask if suit was brought within a reasonable time. *Weiner*, 900 S.W.2d at 316.

*Ms. O=Reilly=s claim*

Ms. O=Reilly alleges that Dr. Wiseman misread the mammogram on April 20, 1999. On November 27, 2000, she underwent additional screening, which also failed to reveal her cancer. On December 4, her doctor referred her to a surgeon. Ms. O=Reilly=s cancer was diagnosed on December 27, 2000. It is at this point that Ms. O=Reilly is deemed to have knowledge of the fact of injury and the

---

[13] *Shah* also attempted to clarify the Areasonable time standard@ applicable when there is a valid open-courts claim. AA plaintiff may not obtain relief under the open-courts provision if he does not use due diligence and sue within a reasonable time after learning about the alleged wrong.@ *Shah v. Moss*, 67 S.W.3d 836, 847 (Tex. 2001). In *Shah*, the plaintiff knew about his alleged injury at least seventeen months before he brought suit. Because the plaintiff offered no valid explanation for the delay, the court concluded the suit was not filed within a reasonable time. The court also cited with approval *Fiore v. HCA Health Services of Texas, Inc.*, 915 S.W.2d 233, 237 (Tex. App.CFort Worth 1996, writ denied) (one-year delay), and *Hall v. Dow Corning Corp.*, 114 F.3d 73, 77 (5th Cir. 1997) (fifteen-month delay). *Id.* Therefore, absent a valid explanation for delay which shows that the plaintiff was exercising due diligence, at least a one-year delay is likely to be considered unreasonable as a matter of law.

underlying facts and conditions of her claim. On December 27, therefore, she had discovered her alleged wrong and had four months to file suit before the statute ran as to Dr. Wiseman. *See Moreno*, 787 S.W.2d at 357; *Husain*, 964 S.W.2d at 919.

It was not impossible for Ms. O=Reilly to discover her injury within the two-year limitations period; when she learned she had breast cancer on December 27, she was aware of the possible negligence of those who had told her the earlier mammograms revealed no signs of cancer. Understandably, Ms. O=Reilly did not immediately hire a lawyer and head to the courthouse; she first hired a doctor and focused all her energy and attention on pursuing the medical treatment necessary to save her life. But as of December 2000, four months remained to sue Dr. Wiseman within two years of the date of his treatment in April 1999. The legislature has adopted an absolute two-year statute of limitations to pursue medical malpractice claims. *See* Tex. Rev. Civ. Stat. Ann. art. 4590i. The supreme court has found that this restriction cannot survive an open-courts challenge if it would be Aimpossible@ for the patient to sue within the two-year period. *See Shah*, 67 S.W.3d at 846-47; *Weiner*, 900 S.W.2d at 321; *Moreno*, 787 S.W.2d at 357. It is quite understandable that Ms. O=Reilly would concentrate on fighting her disease before pursuing her medical negligence claims, but because she had four months after discovering her injury in which to file such a claim against Dr. Wiseman, we cannot say that conditions made it impossible for her to do so. The supreme court has held that the open-courts provision allows a patient to avoid the absolute two-year limitations only if it would be impossible or exceedingly difficult to discover the injury within that period. We agree that the application of this absolute limitations period to Ms. O=Reilly under these circumstances is exceedingly harsh. This is a choice the legislature has made to limit the time insureds are

**18**

exposed to liability.  As we read the teachings of the supreme court, the open-courts provision negates this

absolute time period only if conditions make it virtually impossible to discover one=s injury within two years.

 For four months after she learned of her injury, Ms. O=Reilly had a chance to pursue her negligence claims,

even though we would all sympathize with her decision to get well first.  With the abolition of the discovery

rule by *Morrison*, the absolute limitations period required Ms. O=Reilly to bring suit within the four months

after she learned of her injury.[14]

---

[14]  *See also Guiterrez v. Lee*, 812 S.W.2d 388, 393 (Tex. App.CAustin 1991, writ denied) (noting Aa provision is [not] unconstitutional [solely] because it limits the period in which the plaintiff may analyze his case@ and holding that a three-month period is sufficient under the open courts doctrine).

Ms. O=Reilly alleges that she did not know of her cause of action against Dr. Wiseman until her attorneys had her mammograms read by an expert, some eight months after the diagnosis of her cancer, analogous to the facts of *Hellman*. Ms. O=Reilly relies on *Gagnier v. Wichelhaus* for the proposition that Adelay in providing medical records, the time for recovery, consultation with an attorney and investigation should be considered when determining whether plaintiff=s delay in filing suit was reasonable.@ 17 S.W.3d 739, 745 (Tex. App.CHouston [1st Dist.] 2000, pet. denied) (citing *DuRuy v. Garza*, 995 S.W.2d 748 (Tex. App.CSan Antonio 1999, no pet.)). Unfortunately, *Gagnier* and *DuRuy* are irrelevant to the precise issue of this case because those courts had found an open-courts violation *prior* to articulating what could be considered in determining whether a delay in filing suit was reasonable. In both cases, it had been determined that it was impossible or exceedingly difficult for the plaintiff to discover the wrong and file suit within the two-year period. *See id.* at 744 (A[Plaintiff] could not have learned of her injury sooner.@); *DuRuy*, 995 S.W.2d at 752 (holding it was impossible for plaintiff to discover injury when misdiagnosed and treated for biliary cancer for three years prior to new doctor determining she had gall bladder disease). Those courts held that the above factors could be considered when examining the reasonable-time rule, which applies *only* to open-courts violations.[15] *See Weiner*, 900 S.W.2d at 316. To determine whether it

---

[15] We need not reach the reasonable time analysis in this case because Athe reasonable-time rule [is not applied] to cases other than those involving claims that are by their nature exceedingly difficult or impossible to discover,@ *Weiner*, 900 S.W.2d at 321, and Ms. O=Reilly has not established her prima facie case of an open-courts violation. Whether Ms. O=Reilly filed her claim within a reasonable time is irrelevant unless her claim is kept alive by the open-courts doctrine. We make no assertion as to whether the facts in this case would constitute a reasonable time other than to note that the reasonable time standard has been developed on a case-by-case basis and is generally a question of fact. *Compare Shah*, 67 S.W.3d at 847 (endorsing a one-year limit to what is considered unreasonable as a matter of law), *and Gagnier v. Wichelhaus*, 17 S.W.2d 739, 745 (Tex. App.CHouston [1st Dist.] 2000, pet. denied) (ten-month delay reasonable when taking into account Adelay in providing medical records, the time for recovery, consultation with an attorney and investigation@), *and DuRuy v. Garza*, 995 S.W.2d 748, 753 (Tex. App.CSan

was impossible or exceedingly difficult for Ms. O=Reilly to discover her injury and bring suit requires an entirely different standard than determining whether suit was brought within a reasonable time once an open-courts violation is determined. *See, e.g.*, *Voegtlin v. Perryman*, 977 S.W.2d 806, 813 (Tex. App.CFort Worth 1998, no pet.) (that plaintiffs did not consider bringing cause of action against defendant was not sufficient to raise fact issue regarding reasonable opportunity when they knew of facts giving rise to cause of action within two-year limitations period). The language of section 10.01 and the surrounding case law required Ms. O=Reilly to bring her suit within the two-year period because she discovered the facts of her alleged injury within the two-year period. Therefore, the open courts provision cannot save her claim.

### CONCLUSION

This case illustrates the policy the legislature has adopted to limit medical malpractice claims. Section 10.01 of the Act sets up an absolute limitations period. In giving effect to the statute of limitations and the case law, we do not ignore the harsh effect it has upon Ms. O=Reilly=s constitutionally protected right to redress. Nevertheless, the supreme court=s holdings in this area of the law require us to find that Ms. O=Reilly=s claim is barred by the statute of limitations. Because the facts of the alleged injury were discovered well within the two-year period, it was not impossible for her to bring suit before the limitations period ended four months later. We affirm the judgment of the district court.

---

Antonio 1999, no pet.) (one-year delay reasonable), *and Work v. Duval*, 809 S.W.2d 351, 353-354 (Tex. App.CHouston [14th Dist.] 1991, no writ) (fact that injury was discovered four months prior to expiration of two-year limitations period irrelevant because plaintiff unreasonably delayed in filing suit for twenty-one months following discovery of injury), *with LaGesse v. PrimaCare, Inc.*, 899 S.W.2d 43, 47 (Tex. App.CEastland 1995, pet. denied) (one-year delay unreasonable); *see also Neagle v. Nelson*, 685 S.W.2d 11, 12 (Tex. 1985) (Kilgarin, J., concurring) (reasonableness of delay before filing suit after discovery of injury should ordinarily be question of fact measured on Adiligence@ standard).

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   April 24, 2003