IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 18, 2008

Charles R. Fulbruge III
Clerk

No. 07-50418

RICK MENDOZA; IRENE MENDOZA

Plaintiffs - Appellants

v.

ALICIA G. MURPHY, M.D.; MARIANO ALLEN, M.D.

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas

Before JONES, Chief Judge, and BARKSDALE and STEWART, Circuit Judges.

EDITH H. JONES, Chief Judge:

Plaintiffs Rick and Irene Mendoza appeal the district court's decisions to retain supplemental jurisdiction over their state law claims against Defendants Dr. Alicia Murphy and Dr. Mariano Allen and grant summary judgment based on the Texas statute of limitations, which is not here superseded by the state's constitutional open courts doctrine. TEX. REV. CIV. STAT. ANN. art. 4590i, § 10.01, recodified at TEX. CIV. PRAC. & REM. CODE ANN. § 74.251. We affirm.

BACKGROUND

Rick Mendoza's bladder was surgically removed in 2001 after Defendants diagnosed his bladder cancer as invasive. The Mendozas initially sued the United States in 2003, asserting that the physicians at the El Paso Veterans

Affairs hospital failed to diagnose and treat his cancer.  In 2005, Plaintiffs joined the Defendants Murphy and Allen to the lawsuit, alleging the diagnosis of invasive cancer was in error, and their medical malpractice led to unnecessary removal of his entire bladder.  The relevant details are as follows.

From 1996 to 2001, Rick Mendoza was treated for urinary tract problems at the El Paso Veterans Affairs Medical Center.  In November 2001 Mendoza visited Dr. Jeffrey Taber, a civilian urologist at the Las Palmas Medical Center, who conducted a biopsy of Mendoza's bladder.  Defendant Murphy, a pathologist, analyzed the biopsy specimens and issued a report on November 28, 2001, indicating that the specimens were positive for invasive cancer.[1]  Dr. Taber surgically removed Mendoza's bladder on December 15, 2001.  In his post-operative report, Dr. Taber confirmed the diagnosis of "Muscle invasive transitional cell carcinoma of the bladder."  But in a separate post-operative report dated December 15, 2001, pathologist Dr. Arturo Vargas stated that he found Mendoza's bladder tissue "negative for definitive invasion."

In February 2003, Plaintiffs filed a notice of claim against the United States, alleging negligent failure to diagnose his bladder cancer at the VA hospital in 2000 and 2001.  This action preceded their lawsuit under the Federal Tort Claims Act.  28 U.S.C. §§ 1346(b), 2671 et. seq.  When, during discovery, Plaintiffs attempted to re-examine the original biopsy tissue slides from 2001, Las Palmas Medical Center advised it could not locate them.  Recuts of the biopsy specimen were made, which Plaintiffs' expert examined in February 2005, and he found no signs of invasive cancer.

Based on the expert's report, Plaintiffs sought leave from the district court to file an amended complaint and join Defendants Murphy and Allen on the

---

[1] Although the record is not clear, it appears that Dr. Allen had some sort of supervisory capacity in reading the biopsy.

basis of supplemental jurisdiction. In their motion of March 7, 2005, Plaintiffs represented that:

> This court has and can maintain jurisdiction over the proposed new defendants under 28 U.S.C. § 1367. The alternative for Plaintiffs would be to initiate a lawsuit in state court, which would inefficiently create dual track litigation with increased expenses and a waste of judicial resources.

The district court granted Plaintiffs' motion on March 8. Plaintiffs filed their First Amended Complaint with the district court that same day, alleging state law claims against Murphy and Allen for negligent misdiagnosis. The next day, Plaintiffs filed a parallel action against Murphy, Allen, and the Las Palmas Medical Center in Texas state court, asserting many of the same claims that had just been joined to the federal case.

Both cases proceeded for a year, and in March 2006, Plaintiffs settled their claims against the United States. Plaintiffs then moved the federal court to decline to exercise supplemental jurisdiction over their claims against Murphy and Allen.

The district court denied Plaintiffs' motion and subsequently granted the Defendants' motion for summary judgment, finding Plaintiffs' state law claims barred by the statute of limitations. The Mendozas appeal.

## DISCUSSION

Two issues are raised on appeal. Plaintiffs complain that the district court abused its discretion in retaining supplemental jurisdiction and urge, alternatively, that the Texas "open courts doctrine" preserves their claims from a time-bar. We address each issue in turn.

## I. Supplemental Jurisdiction

Plaintiffs initially suggest that because their First Amended Complaint never specifically invoked the supplemental jurisdiction provision, 28 U.S.C. § 1367, the Complaint was fatally defective and jurisdiction was lacking as to the

state law claims against Murphy and Allen. This argument is legally and factually deficient. The argument is also somewhat misleading. Plaintiffs specifically moved the district court to allow joinder of the Defendants under 28 U.S.C. § 1367. Plaintiffs also affirmed in the Rule 16 Conference Report that supplemental jurisdiction was proper as to these claims. In any event, it is "well settled that where a complaint fails to cite the statute conferring jurisdiction, the omission will not defeat jurisdiction if the facts alleged in the complaint satisfy the jurisdictional requirements of the statute." Hildebrand v. Honeywell, Inc., 622 F.2d 179, 181 (5th Cir. 1980). The question under section 1367(a) is whether the supplemental claims are so related to the original claims that they form part of the same case or controversy, or in other words, that they "derive from a common nucleus of operative fact." See United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966). Here, both the federal and state claims on the face of the pleadings concern the same core factual issue: the proper diagnosis and treatment of Rick Mendoza's bladder cancer. The claims are sufficiently related for purposes of section 1367(a). Plaintiffs adequately stated their case in favor of supplemental jurisdiction below; we will not conclude on appeal that it was lacking based solely on a formal omission in the Complaint.

The more pertinent issue is whether the district court abused its discretion by retaining jurisdiction over the state law claims after the federal claims against the United States had been dismissed. Parker & Parsley Petrol. Co. v. Dresser Indus., 972 F.2d 580, 585 (5th Cir. 1992). Our review is guided by the statutory factors set forth in section 1367(c) and considerations of judicial economy, convenience, fairness, and comity. McClelland v. Gronwaldt, 155 F.3d 507, 519 (5th Cir. 1998), overruled on other grounds by Arana v. Ochsner Health Plan, 338 F.3d 433 (5th Cir. 2003). These interests are to be considered on a case-by-case basis, and no single factor is dispositive. Parker, 972 F.2d at 587.

4

The statute authorizes a court to decline to exercise supplemental jurisdiction over a state law claim are if:

(1)     the claim raises a novel or complex issue of State law,

(2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)     the district court has dismissed all claims over which it has original jurisdiction, or

(4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c).  The second and third factors weigh in favor of declining jurisdiction. After the United States was dismissed from the lawsuit, there were no claims of original jurisdiction remaining, and state law claims dominated.  These two factors, however, are not dispositive, and here they are counterbalanced by other concerns.  See Smith v. Amedisys Inc., 298 F.3d 434, 447 (5th Cir. 2002) (affirming the decision to retain supplemental jurisdiction, despite the dismissal of all federal claims).  In Amedisys the fact that the remaining issues were not complex, were well-known to the court, and were ripe for summary disposition supported the decision to retain jurisdiction.  Id.; see also Batiste v. Island Records, Inc., 179 F.3d 217, 227 (5th Cir. 1999) (noting that the absence of difficult state law questions can weigh heavily in favor of retaining jurisdiction). Similarly, the state law issues in this case were neither novel nor complex. Plaintiffs posit that the open courts doctrine is a confusing area of Texas law, but the one case they cite for this proposition does much to clarify the law.[2]  The open courts doctrine is sufficiently clear and easily applied to the facts of this case.

---

[2] See O'Reilly v. Wiseman, 107 S.W.3d 699, 706-07 (Tex. App. — Austin 2003, pet. denied) (noting the Texas Supreme Court clarified the law on the open courts doctrine in Shah v. Moss, 67 S.W.3d 836 (Tex. 2002)); see also Boyd v. Kallam, 152 S.W.3d 670, 678-81 (Tex. App. — Ft. Worth 2004) (further reconciling and consolidating precedent on the open courts doctrine).

In addition to the statutory factors, the common-law factors of judicial economy, convenience, fairness, and comity also favor affirming the district court's discretionary decision. By the time the district court ruled on the motion to decline supplemental jurisdiction, the case against Defendants had been pending for well over a year, the discovery deadline had passed, and the parties had fully briefed Defendants' motion for summary judgment. The trial court had "substantial familiarity with the merits of the case," Parker, 972 F.2d at 587, and it was reasonable to conclude that "further proceedings in the district court would prevent redundancy and conserve scarce judicial resources." Batiste, 179 F.3d at 228. Finally, the trial court's decision was eminently fair. Plaintiffs complain that by retaining jurisdiction, the district court ran the risk of duplicating similar litigation in state court. But Plaintiffs themselves created the duplicate litigation after having expressly stated in their federal court pleadings a desire to avoid "dual track litigation."[3]

The district court, in sum, did not abuse its discretion in retaining jurisdiction over claims that were fully developed and ripe for disposition on summary judgment.

II.   Open Courts Doctrine

After retaining jurisdiction, the district court held that Plaintiffs' claims were barred by the statute of limitations. We review this decision de novo. Berquist v. Wash. Mut. Bank, 500 F.3d 344, 348 (5th Cir. 2007). Summary judgment is appropriate when the submissions show that "there is no genuine

---

[3] Plaintiffs claim they did not learn that their motion to join the Defendants in federal court had been granted until after they filed the state court action. The filing stamps on the respective Complaints (March 8 in federal court; March 9 in state court) cast doubt on this contention. Even if it were true, Plaintiffs could have avoided dual track litigation by simply dismissing the state court action once they confirmed joinder in federal court. Rather than doing so, Plaintiffs maintained both actions for a full year, obtained a favorable ruling on their expert report in state court, and then sought to dismiss the federal action after settling their claims against the United States.

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id.; FED R. CIV. P. 56(c).

The Texas Medical Liability and Insurance Improvement Act ("Act") provides that a claim for medical negligence must be brought within two years from (1) the date of the tort; (2) the last date of the relevant course of treatment; or (3) the last date of the relevant hospitalization. TEX. REV. CIV. STAT. ANN. art 4590i, § 10.01, recodified at TEX. CIV. PRAC. & REM. CODE ANN. § 74.251; Shah v. Moss, 67 S.W.3d 836, 841 (Tex. 2001). A plaintiff may not choose the commencement date most favorable to him; if the date of the alleged tort is ascertainable, the limitations period begins at that time. Shah, 67 S.W.3d at 841. It bears noting that section 10.01 makes no allowance for a "discovery" rule; the commencement date is not automatically tolled until the plaintiff "knows or has reason to know" of his injury. Morrison v. Chan, 699 S.W.2d 205, 208 (Tex. 1985) (affirming that the clear intent of the legislature in passing section 10.01 was to abolish the discovery rule). For Mendoza, the limitations period began on November 28, 2001, when Defendants allegedly misdiagnosed invasive bladder cancer. Plaintiffs did not file suit against the Defendants until March of 2005, well after the limitations period had expired.

Nonetheless, Plaintiffs claim their suit should be allowed to proceed under the "open courts doctrine." The Texas Constitution provides that "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEXAS CONST. art. 1, § 13. Texas courts have interpreted this provision as protecting a citizen from statutory limitations that "abridge his right to sue before he has a reasonable opportunity to discover the wrong and bring suit." Neagle v. Nelson, 685 S.W.2d 11, 12 (Tex. 1985). Under some circumstances, the open courts doctrine may toll commencement of the section 10.01 limitations period.

To prove an open courts violation, it is the plaintiff's burden to show that (1) he has a cognizable common-law claim that section 10.01 restricts; and (2) the restriction is unreasonable or arbitrary when balanced against the statute's purpose and basis. Shah, 67 S.W.3d at 842. Only the second element is at issue here. Concerning the purpose of section 10.01, it is well-settled that "the legislature's actual purpose in enacting statute of limitations provisions limiting the time for bringing a medical negligence suit is legitimate: to limit the length of time that medical professionals will be exposed to potential liability and thereby reduce medical malpractice insurance rates." Boyd v. Kallam, 152 S.W.3d 670, 677 (Tex. App. — Ft. Worth 2004), pet. dismissed as improvidently granted, 232 S.W.3d 774 (Tex. 2007). When these concerns are balanced against a particular plaintiff's claim, the limitations period from section 10.01 "does not violate the open courts guarantee if the plaintiff had a reasonable opportunity to discover the alleged wrong and bring suit before the limitations period expired." Shah, 67 S.W.3d at 842. As other courts have explained, a plaintiff seeking to prove that 10.01 violates the open courts provision in his case must show that it was "impossible or exceedingly difficult to discover the wrong and bring suit" within the limitations period.[4]

Plaintiffs fail to carry this burden. The alleged negligence in this case occurred on November 28, 2001, the date Rick Mendoza was diagnosed with invasive bladder cancer. Plaintiffs claim they had no reason to suspect this was a misdiagnosis until another expert examined recuts of the biopsy tissue in February 2005 and found no evidence of invasive cancer. Based on a review of

---

[4] O'Reilly, 107 S.W.3d at 706; Weiner v. Wasson, 900 S.W.2d 316, 321 (Tex. 1995) (noting that the Texas Supreme Court has allowed plaintiff a "reasonable time" to file under the open courts doctrine only in cases involving claims that are "by their nature exceeding difficult or impossible to discover"); see also Boyd, 152 S.W.3d at 678-79 (noting there is no substantive difference between the "impossible or exceedingly difficult to discover" standard and the "no reasonable opportunity to discover" standard).

the record, we cannot agree. Plaintiffs suspected as early as February 2003, when they noticed their claim against the United States, that some sort of malpractice had occurred. When they filed suit against the United States in August 2003, three months still remained before the state limitations period expired. This provided Plaintiffs a reasonable opportunity to conduct discovery and join additional defendants. Critically, the pathology report from 2001 itself indicated that Mendoza's cancer may not have been invasive. Though the initial diagnosis was for invasive cancer, the pathologist's post-operative analysis on December 15, 2001, stated the removed tissue was "negative for definitive invasion by cancer."

In light of the above, Plaintiffs had a reasonable opportunity to discover their claims and bring suit against the Defendants within the two-year limitations period. Accordingly, there was no open courts violation. As recognized by Texas courts, this rule is more restrictive than the traditional "discovery" rule. O'Reilly, 107 S.W.3d at 708 (noting that the open courts provision tolls the section 10.01 limitations period "only if conditions make it virtually impossible to discover one's injury within two years"). Plaintiffs fail to meet this standard, and as a result their claims are time-barred.

## CONCLUSION

For the aforementioned reasons, the judgment of the district court is AFFIRMED.