# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 28, 2024

Lyle W. Cayce
Clerk

No. 23-30356

Joseph Ash; Justin Bolton; Matthew Crawford,

*Plaintiffs—Appellants*,

*versus*

Flowers Foods, Incorporated; Flowers Baking Company
of Baton Rouge, L.L.C.,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:21-CV-3566

---

Before Wiener, Haynes, and Higginson, *Circuit Judges*.
Wiener, *Circuit Judge*:[*]

Plaintiffs-Appellants Joseph Ash, Justin Bolton, and Matthew Crawford ("Plaintiffs") appeal the district court's grant of summary judgment in favor of Defendants-Appellees Flowers Foods, Incorporated and Flowers Baking Company of Baton Rouge, L.L.C. (collectively, "Flowers"). For the following reasons, we AFFIRM.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-30356

## I. Background

Flowers manufactures and markets baked goods using a "direct store delivery" system. Under this business model, Flowers divides its market into geographic territories and sells the distribution rights to stores within those territories to independent distributors. Distributors order, purchase, and deliver products directly to customers. Because of the limited shelf life of bread products, distributors determine the necessary quantity of products for each of their customers only one week before the date of delivery. The products are then manufactured at Flowers' bakeries, some of which are located outside of Louisiana, before being shipped nightly to warehouses in Alexandria and Natchitoches. Six to twelve hours after arrival at the warehouses, the products are picked up by the distributor that ordered them and are then delivered to customers. Distributors typically drive company trucks, but occasionally use their personal vehicles for "pull-up" restocking.

Distributors are paid on a commission basis. Pursuant to a Distributor Agreement signed by each employee, Flowers deducts warehouse rent, administrative fees, and "shrink" and "stale" costs from employees' wages. "Shrink costs" refers to lost sales for bread that is never scanned out of inventory. "Stale costs" are profits lost when bread is unsold by a certain date.

Plaintiffs are three former Flowers distributors. They contend that Flowers intentionally misclassified them as independent contractors to avoid paying them overtime, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Louisiana Wage Payment Act ("LWPA"), La. R.S. 23:631, *et seq.* They also assert that Flowers took illegal deductions from their paychecks in violation of the LWPA. The district court

2

granted summary judgment to Flowers on all of Plaintiffs' claims. Plaintiffs appeal.[1]

## II. Standard of Review

On appeal, we review a district court's grant of summary judgment de novo. *United States ex rel. Schweizer v. Canon, Inc.*, 9 F.4th 269, 273 (5th Cir. 2021). Summary judgment is proper when the record shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All facts and reasonable inferences are construed in favor of the nonmovant. *Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009).

## III. Discussion

### A. The FLSA

The FLSA requires that employers pay employees who work in excess of forty hours per week one-and-a-half times their regular hourly rate. 29 U.S.C. § 207(a)(1). There are, however, several exceptions to this rule. *See* 29 U.S.C. § 213. Exemptions to the FLSA are affirmative defenses that employers must demonstrate by a preponderance of the evidence. *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 580–81 (5th Cir. 2013).

The Motor Carrier Act ("MCA") is one such exemption. The right to overtime does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and

---

[1] Plaintiffs do not appeal the district court's grant of summary judgment on their claim for overtime violations under the LWPA.

maximum hours of service pursuant to section 31502 of title 49." 29 U.S.C. § 213(b)(1). That section, in turn, provides that the Secretary may only regulate "motor carriers" that participate in interstate transportation. 49 U.S.C. §§ 31501(1), 31502(b); 29 C.F.R. § 782.2(a). The MCA defines interstate transportation as, *inter alia*, movement "between a place in . . . a State and a place in another State; [or] a State and another place in the same State through another State." 49 U.S.C. § 13501(1). Transportation, in turn, includes "services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." 49 U.S.C. § 13102(23)(B).

In this case the district court held that the MCA precluded Plaintiffs' claim for overtime under the FLSA. On appeal, Plaintiffs complain that they did not engage in transportation "in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a). Plaintiffs picked up products at warehouses in Louisiana and delivered them to customers in Louisiana. They contend that they only engaged in *intrastate* transportation, putting them outside of the MCA's purview.

However, this circuit has applied the MCA not only to the "actual transport of goods across state lines" but also to the "intrastate transport of goods in the flow of interstate commerce." *Siller v. L & F Distribs., Ltd.*, 109 F.3d 765, 1997 WL 114907, at *1 (5th Cir. 1997) (per curiam). A "carrier is engaged in interstate commerce when transporting goods . . . originating in transit from beyond [the state in question] . . . even though the route of a particular carrier is wholly within one state." *Id.* (quoting *Merchants Fast Motor Lines, Inc. v. I.C.C.*, 528 F.2d 1042, 1044 (5th Cir. 1976) (calling this rule "elemental")). Whether transportation "between two points in a single state is interstate or intrastate depends on the shipment's 'essential character.'" *Id.* at *2 (quoting *Merchants Fast Motor Lines, Inc. v. I.C.C.*, 5

F.3d 911, 917 (5th Cir. 1993)). Essential character, in turn, refers to "the shipper's fixed and persisting intent at the time of shipment." *Id.* The "totality of all of the facts and circumstances eventually determines whether a shipper has the requisite intent to move goods continuously in interstate commerce." *Id.* (citing *Texas v. United States*, 866 F.2d 1546, 1560 (5th Cir. 1989)).

Flowers had such an intent here. Plaintiffs ordered products based on sales history and projections for particular stores. The bread products were baked accordingly, before being shipped into Louisiana. Within hours of the products' arrival at the warehouses in Louisiana, they were picked up by Plaintiffs and transported to the customers. Even if Flowers did not know at the time of production which customers would ultimately receive which goods, it knew that the products were shipped into Louisiana for distribution to Louisiana customers.[2] It is clear that Flowers had the intention, when it shipped the specially-ordered products from its out-of-state facilities, that the products would reach Louisiana customers.

Plaintiffs contend that the flow of interstate commerce was severed once the products arrived at the warehouses, where Plaintiffs had to arrange for delivery by sorting and loading inventory onto their trucks. But the MCA expressly includes "arranging for . . . delivery" as part of its definition of "transportation," along with "storage, handling, packing, [and] unpacking." 29 U.S.C. § 13102(23)(B). The Interstate Commerce Commission

---

[2] "[T]he shipper need not know the exact identity of particular consumers in order to intend that the goods move continuously in interstate commerce." *Central Freight Lines v. I.C.C.*, 899 F.2d 413, 421 (5th Cir. 1990); *see also* Policy Statement, 8 I.C.C.2d 470, 473–74, 1992 WL 122949, at *2 (Apr. 27, 1992) (explaining that a shipper's "lack of knowledge of the specific, ultimate destination . . . at the time the shipment leaves its out-of-State origin" is insufficient to "establish a break in that continuity that would change the interstate character of the subsequent transportation").

("I.C.C.")[3] has noted that when, as here, a "warehouse serves only as temporary storage to permit orderly and convenient transfer of goods in the course of what the shipper intends to be a continuous movement to destination, the continuity of the movement is not broken at the warehouse." Policy Statement, 8 I.C.C.2d at 472–73. That Plaintiffs sorted and loaded their ordered products does not sever the causal chain of intent. *See Siller*, 109 F.3d at *2. Plaintiffs did not engage in the type of processing that might do so. *See Central Freight Lines*, 899 F.2d at 415 n.1, 422 (suggesting that combining in-state and out-of-state products to create something new would sever chain); *Kline v. Wirtz*, 373 F.2d 281, 282 (5th Cir. 1967) (per curiam) (holding that because a "substantial part of the . . . meat was boned, trimmed, and cut to order," the "District Court had ample basis to conclude that the 'interstate' movement ceased when the meat was delivered to Employer's storage and processing area"). The temporary stop at the warehouse was merely intended to "facilitate the interstate movement." *See Siller*, 109 F.3d at *3.

More broadly, Plaintiffs contend that the district court was wrong to apply the "totality of the circumstances" shipper-intent test, but instead should have used a three-part test devised by the I.C.C. in the 1950s to determine whether their role constituted interstate transportation. The factors under that framework which could preclude intrastate transportation from being considered interstate are "(1) that there is no specific order destined for a specific destination; (2) that the terminal storage is a distribution point or local marketing facility; and (3) that transportation from

---

[3] The I.C.C. regulated motor carrier safety prior to the Secretary of Transportation. *See* I.C.C. Termination Act of 1995, Pub. L. No. 104–88, 109 Stat. 803, 804 (1995).

hub to spoke is arranged only after sale or allocation from storage." *Central Freight Lines*, 899 F.2d at 421. However, this argument is unavailing.

First, this court has already rejected that test under similar facts. *See id.* Second, while the three-factor test is incorporated into Department of Labor ("DOL") regulations, *see* 29 C.F.R. § 782.7(b)(2), the DOL recognizes that the Department of Transportation ("DOT") has "supplemented" the specific criteria in situations such as this involving "motor traffic moving from warehouses or similar facilities to points in the same State after or preceding a movement from another State." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on Fair Labor Standards Act, 2005 WL 330602, at \*2 (Jan. 11, 2005) (citation omitted). In those circumstances, the DOT now uses the "fixed and persisting transportation intent" test. *Id.*[4]

Plaintiffs advocate a "textualist" reading of the statute, when employees who do not enter other states simply do not travel in interstate commerce. They point to *Encino Motorcars, LLC v. Navarro*, in which the Supreme Court held that exemptions under the FLSA must be given a "fair reading." 138 S. Ct. 1134, 1142 (2018). We have characterized this "fair reading" requirement as contrasting with the "narrow interpretation previously espoused by this and other circuits." *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 579 (5th Cir. 2018). Plaintiffs fail to explain why the "totality of the circumstances" analysis is not a "fair reading." *See Encino*, 138 S. Ct. at 1142. The district court's analysis of the FLSA and the MCA faithfully centers the statutes' texts in determining their applicability.

---

[4] "Because DOT is the final administrative authority for the MCA, its interpretation of its jurisdiction is controlling." Opinion Letter, 2005 WL 330602, at \*2 n.5 (citing *Martin v. Coyne Int'l Enters., Inc.*, 966 F.2d 61, 63–64 (2d Cir. 1992)).

Further, even if the three-part test were applicable, Plaintiffs would still be out of luck because there was a specific customer order being filled at the time of shipment. *See Central Freight Lines*, 899 F.2d at 421. Plaintiffs placed orders for particular stores before the bread was baked and delivered to the warehouses. Additionally, transportation of the products from the "hub" of the warehouses to the "spokes" of the stores was arranged before the items arrived at the storage facility. *See id.* Plaintiffs were notified when their ordered products arrived at the warehouse and picked up their ordered products five days per week. In sum, the three-part test has been all but abandoned in situations such as this, and, even if it were to apply, it would not cut in favor of Plaintiffs. *See Mena v. McArthur Dairy, LLC*, 352 F. App'x 303, 306 n.2 (11th Cir. 2009) (per curiam) ("We are . . . in accord with other circuits that have held that this standard has been refined, if not phased out, in favor of the more general consideration that draws a fixed and persisting intent from all of the facts and circumstances surrounding the transportation." (internal quotation marks and citation omitted)). Any way you slice it, the MCA exempts Plaintiffs from the FLSA.

Plaintiffs alternatively assert that the Technical Corrections Act ("TCA") spares them from the MCA's exemption. The TCA recognizes that drivers working with "motor vehicles weighing 10,000 pounds or less" are not covered by the MCA. Technical Corrections Act of 2008, Pub. L. No. 110–244, 122 Stat. 1572, 1620 (June 6, 2008). Flowers distributors do the majority of their work with company trucks weighing more than 10,000 pounds. Although Plaintiffs occasionally used their personal vehicles, they submitted no evidence as to those cars' weights. Although Plaintiffs insist that their personal cars were "at least inferentially" less than 10,000 pounds, they cannot create an issue of fact without evidence of the "actual [weight of] the vehicles the plaintiffs drove." *See Rychorewicz v. Welltec, Inc.*, 768 F. App'x 252, 256 (5th Cir. 2019) (per curiam) (finding that website links stating

the weight of particular makes and models of vehicles were insufficient evidence of weight within the context of the TCA without the cars' VIN numbers). It might be the employer's burden to establish the applicability of the MCA exemption, but it is the employee's burden to show the weight of the vehicles under the TCA. *Carley*, 890 F.3d at 580; *Rychorewicz*, 768 F. App'x at 257. Plaintiffs failed to meet this burden and establish a dispute of fact that would preclude summary judgment.

The MCA applies to exempt Plaintiffs from the FLSA's overtime requirements, even though they only drive goods within Louisiana, because they play a part in achieving the shipper's fixed intent to move goods between states. The district court did not err in granting summary judgment in favor of Flowers on this claim.

## B. The LWPA[5]

Flowers regularly deducted warehouse rent, administrative fees, and shrink and stale costs from Plaintiffs' wages. Plaintiffs claim that these are illegal fines under the LWPA, which states that an employer may not "assess any fines against his employees or deduct any sum as fines from their wages." LA. STAT. ANN. § 23:635. "A fine, within the meaning of [section] 23:635, is a pecuniary penalty imposed for the violation of some law, rule or regulation." *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 637 (5th Cir. 2001) (quoting *Brown v. Navarre Chevrolet, Inc.*, 610 So.2d 165, 170 (La. Ct. App. 1992)). The deductions taken by Flowers were not penalties associated with violating any sort of rule, but were instead a policy related to wage payment—one which was expressly authorized by Plaintiffs through their Distribution

---

[5] Flowers contends that Plaintiffs' LWPA claim is untimely. Because we dispose of that claim on its merits, we decline to reach the issue of timeliness.

Agreements. *See Samson*, 242 F.3d at 637–38. As the district correctly court held, those deductions do not violate the LWPA.

## C. Supplemental Jurisdiction

Finally, Plaintiffs assert that the district court improperly retained supplemental jurisdiction over their LWPA claim after dismissing their FLSA claim. According to Plaintiffs, the district court should have declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) and dismissed the LWPA claims without prejudice instead of with prejudice. The statute provides that a district court "*may* decline to exercise supplemental jurisdiction" if, *inter alia*, (a) "the claim raises a novel or complex issue of State law," (b) "the district court has dismissed all claims over which it has original jurisdiction," or (c) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c) (emphasis added). This circuit also considers the common law factors of "judicial economy, convenience, fairness, and comity." *Enochs v. Lampasas County*, 641 F.3d 155, 159 (5th Cir. 2011) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). We review a district court's decision to retain jurisdiction over a state law claim for abuse of discretion. *Batiste v. Island Records Inc.*, 179 F.3d 217, 226 (5th Cir. 1999); *see also Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999) (describing the district court's "wide discretion" in this arena).

The district court did not abuse its discretion in exercising supplemental jurisdiction over Plaintiffs' LWPA claim. The issue was "fully developed and ripe for disposition on summary judgment." *See Mendoza v. Murphy*, 532 F.3d 342, 347 (5th Cir. 2008). The district court was familiar with the merits of the case, which had been pending for more than two years. *See id.* Discovery had closed, and the case was less than three months away from trial. *See id.* Further, the LWPA claim presented "no novel or especially

unusual questions." *See Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) (citation omitted). Finally—and most importantly—Plaintiffs failed to request a remand from the district court in the event that it ruled for Flowers on the federal claim. That failure renders Plaintiffs' instant challenge waived. *See Powers v. United States*, 783 F.3d 570, 576–77 (5th Cir. 2015) (quoting *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000–01 (9th Cir. 1997) (en banc) ("[W]hile Article III jurisdiction must be considered *sua sponte*, review of the discretionary aspect to supplemental jurisdiction under § 1367(c) is waived unless raised in the district court.")).

## IV. Conclusion

The district court did not err in granting summary judgment in favor of Flowers, nor in retaining jurisdiction over Plaintiffs' state law claim. That judgment is AFFIRMED.