

# NUMBER 13-13-00273-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**ALEJANDRO SANTOS AND MARTHA**
**MONICA SANTOS,**                                                      **Appellants,**

**v.**

**MADELYN HOLZMAN, M.D., INDIVIDUALLY**
**AND D/B/A UROLOGIC SPECIALISTS**
**ASSOCIATES, P.A.,**                                                    **Appellee.**

---

### On appeal from the 275th District Court
### of Hidalgo County, Texas.

---

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Benavides and Perkes
### Memorandum Opinion by Chief Justice Valdez

Appellants, Alejandro and Martha Monica Santos,[1] appeal from the trial court's

granting of traditional summary judgment in favor of appellee, Madelyn Holzman, M.D.

---

[1] Appellants refer to Martha Monica Santos as "Monica" and to Alejandro Santos as "Alex."

By three issues, appellants contend that the trial court erred in: (1) granting summary judgment; (2) granting Dr. Holzman's objections to their summary judgment evidence; and (3) denying appellants' motion for sanctions against Dr. Holzman and her attorney. We affirm.

## I. BACKGROUND

On March 11, 1998, Dr. Roger Vitko performed a vasectomy on Alex. Soon after the procedure, Alex's wife, Monica, became pregnant, and she eventually gave birth on December 1, 1998. On January 5, 1999, Alex visited Dr. Vitko concerning his fertility and requested a post-vasectomy sperm analysis performed. The sperm count test results showed that Alex was fertile. Dr. Vitko told Monica in a telephone conversation that Alex was still fertile.

On January 28, 1999, Alex, who was still concerned about the success of his vasectomy, went to see Dr. Holzman, a board certified urologist, for a second opinion concerning his fertility. According to appellants, upon her palpation of the clips placed in Alex's scrotum, Dr. Holzman concluded that Alex was more than likely sterile or "not fertile."[2]

Alex submitted to a second post-vasectomy sperm count test as ordered by Dr. Holzman. Central Diagnostic Clinic Lab located in Brownsville, Texas, performed the sperm count test on February 23, 1999.[3] Alex claims that then on March 1, 1999, he had

_____

Accordingly, we will also refer to them as such.

[2] Dr. Holzman points out in her brief that during his deposition, Alex admitted that he understood that at the January 28, 1999 office visit, Dr. Holzman would not be able to determine whether he was fertile.

[3] In their brief, appellants claim that the test result was "positive for fertility." However, Dr. Holzman points out that the test revealed a finding of "0-1 non-motile spermatozoa," which means that only one sperm was found in Alex's sperm sample, and that it was not moving." Dr. Holzman also states that appellants' expert Phillip Diggdon, M.D. testified that the range of sperm for a semen sample can be in the

a phone conversation with Dr. Holzman's nurse regarding the results of the semen analysis where the nurse told him that the test was negative meaning to Alex that he was sterile. The couple continued using birth control. During his deposition and questioning by Dr. Holzman's attorney, Alex agreed that "no doctor has ever told" him that he is sterile. Alex also stated during his deposition that after he spoke with the nurse he was "not certain" about his fertility.

On May 18, 1999, appellants filed suit against Dr. Vitko, and other parties, alleging that Dr. Vitko committed negligence, in relevant part, by failing to: (1) "properly perform a sterilization operation upon" Alex; (2) after the operation, "follow up with [Alex] by proper testing to determine whether the operation was a success"; and (3) "advise [Alex] after the sterilization operation that [Alex] might not be sterile and to refrain from sexual relations until a determination could be made that [Alex] was sterile."

According to Alex's affidavit, in "July or early August 1999," Alex obtained and read a January 28, 1999 letter written by Dr. Holzman addressed to his "family doctor."[4] According to his brief, Alex obtained this letter from his attorney who was handling his claim against Dr. Vitko. In his brief, Alex states that the report "confirmed to him what Dr. Holzman told him at the initial visit (more than likely sterile) and what the nurse told him on the phone which was that the sperm test was negative." Based on the January 28,

---

millions. Dr. Holzman also cites when her attorney asked Dr. Diggdon, "Another urologist has suggested that such a sperm count of 0 to 1 non-motile sperm, such a person that is producing that would have a very small likelihood of being able to impregnate. Would you agree with that generally?" Dr. Diggdon responded, "Yeah, the lower the sperm count, the less likely" and that Dr. Holzman would be "authorized to say that [test] was inconclusive."

[4] The letter states that Dr. Holzman's "impression" was infecundity and that she recommended "to send the patient's semen for analysis." Dr. Holzman further stated, "I will make any further recommendations after his semen analysis."

1999 letter, Alex believed he was 100% sterile.[5]  The report stated that Dr. Holzman's impression was infecundity, which Alex discovered means "barren."  Alex stated in his affidavit that after reading this letter, the couple began having "sexual intercourse without using birth control" about three to four times per week.

Subsequently, on January 10, 2001, Monica took a pregnancy test that was positive.  On January 29, 2001, Monica's doctor told her that she was pregnant.[6]  In her affidavit, Monica stated that she has no medical training, that it is not unusual for her to miss her period, and that she found out she was pregnant when her doctor diagnosed the pregnancy on January 29, 2001.  However, during her deposition, Monica stated that she took the pregnancy test after she missed her menstrual period, and agreed that she "knew between the 5th and 10th of January that [she was] pregnant."

On August 9, 2001, appellants filed their "Plaintiffs' Fourth Amended Petition" adding their claim against Dr. Holzman for the first time, alleging that she committed medical malpractice by giving Alex the "impression" that he was sterile on January 28, 1999 and March 1, 1999.  Dr. Holzman filed a motion for traditional summary judgment on the basis that, among other things, the statute of limitations barred appellants' claims.  The trial court granted Dr. Holzman's motion for traditional summary judgment.  This appeal followed.

## II.    STATUTE OF LIMITATIONS

---

[5] However, when asked at his deposition, "So you understood when you left on the 28th that a determination on your fertility had not been made, nor could it be made until a semen analysis was done on samples that would bring at a later date.  Is that all correct," Alex replied, "Correct."

[6] Subsequently, Monica gave birth to a second healthy post-vasectomy child.

4

Appellants contend that the trial court improperly granted Dr. Holzman's motion for traditional summary judgment because the open courts provision of the Texas Constitution has been violated by application of the statute of limitations in this case. *See* TEX. CONST. art. 1 § 13 ("All courts shall be open and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."). Dr. Holzman argues that as a matter of law the open courts doctrine does not apply in this case; therefore, the trial court properly granted summary judgment on the basis that appellants filed their suit against Dr. Holzman outside the statute of limitations period.

## A.    Standard of Review and Applicable Law

"Rule 166a provides a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine fact issue." *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex. 1999) (citing *Swilley v. Hughes*, 488 S.W.2d 64, 68 (Tex. 1972)); *see also* TEX. R. CIV. P. 166a (establishing that a party may file a motion for traditional summary judgment). We perform a de novo review of the granting of a traditional motion for summary judgment. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.—Corpus Christi 2003, no pet.).

In a traditional motion for summary judgment, the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). If the movant's motion and summary judgment proof facially establish a right to judgment as a matter of law, the burden shifts to the non-movant to raise a material

5

fact issue sufficient to defeat summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.); *HBO, A Div. of Time Warner Entm't Co., L.P. v. Harrison*, 983 S.W.2d 31, 35 (Tex. App.—Houston [14th Dist.] 1998, no pet.). "[W]e take as true all evidence favorable to the non[-]movant, and we indulge every reasonable inference and resolve any doubts in the non[-]movant's favor." *Valence Operating Co.*, 164 S.W.3d at 661. In deciding whether a disputed material fact issue precludes summary judgment, we resolve every reasonable inference in favor of the non-movant and take all evidence favorable to it as true. *See Nixon*, 690 S.W.2d at 548–49; *Karl v. Oaks Minor Emergency Clinic*, 826 S.W.2d 791, 794 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

A defendant seeking summary judgment on the basis that the statute of limitations has expired must establish the defense as a matter of law. *Chacon v. Andrews Distrib. Co., Ltd.*, 295 S.W.3d 715, 726 (Tex. App.—Corpus Christi 2009, pet. denied) (citing *Diaz v. Westphal*, 941 S.W.2d 96, 97-98 (Tex. 1997)). However, "[u]nlike the discovery rule, which a defendant must negate once the plaintiff has pleaded it, a plaintiff who asserts that the open courts provision defeats limitations bears the burden of raising a fact issue." *Yancy v. United Surgical Partners Int'l, Inc.*, 236 S.W.3d 778, 782 (Tex. 2007).

## B.    Burden to Conclusively Establish Statute of Limitations Defense

Dr. Holzman argues that she was entitled to summary judgment based on her affirmative defense that appellant's claims are barred by the statute of limitations.[7] Appellants respond that they learned about Dr. Holzman's alleged negligence on January

---

[7] As further discussed below, Dr. Holzman also challenges appellants' contention that enforcing the statute of limitations in this case violates the open courts provision of the Texas Constitution.

6

29, 2001, one day after the statute of limitations expired; thus, the open courts provision of the Texas Constitution applies.[8]

The applicable statute of limitations at the time that appellants filed suit stated:

> Notwithstanding any other law, no healthcare liability claim may be commenced unless the action is filed within two-years from the occurrence of the breach or tort or from the date the medical or healthcare treatment that is the subject of the claim or the hospitalization for which the claim is made is completed; provided that, minors under the age of 12 shall have until their 14th birthday in which to file, or have filed on their behalf, the claim. Except as herein provided, this subchapter applies to all persons regardless of minority or other legal disability.

Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 10.01, 1977 TEX. GEN. LAWS 2039, 2052 (repealed 2003)[9]; *see Yancy*, 236 S.W.3d at 783–84. The language "notwithstanding any other law," reflects that the Legislature unequivocally intended that the statute of limitations in a medical malpractice cause be absolute. *See Kimbrell*, 288 S.W.3d at 467.

In the trial court and on appeal, appellants allege that Dr. Holzman committed medical malpractice on January 28, 1999 and March 1, 1999. To comply with the applicable statute of limitations, appellants must have filed their complaints of medical malpractice against Dr. Holzman for her acts or omissions that allegedly occurred on those dates on or before January 28, 2001 and March 1, 2001 respectively. *See Yancy*, 236 S.W.3d at 783–84. However, the summary judgment evidence uncontrovertibly

---

[8] *See DeRuy v. Garza*, 995 S.W.2d 748 (Tex. App.—San Antonio 1999, no pet.) ("Where the plaintiff alleges misdiagnosis, the date of the misdiagnosis or failure to diagnose is the dispositive date for limitations purposes.").

[9] Section 74.251(a), entitled "Statute of Limitations on Health Care Liability Claims," states:

> Notwithstanding any other law and subject to Subsection (b), no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed . . . .

TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a) (West, Westlaw through 2013 3d C.S).

showed that appellants filed their suit against Dr. Holzman on August 20, 2001, which is outside the absolute two-year statute of limitations for medical malpractice. *See id.* Therefore, Dr. Holzman met her summary judgment burden of showing that no genuine issue of material fact exists and that she is entitled to judgment as a matter of law on her statute of limitations defense. *See* TEX. R. CIV. P. 166a; *Nixon*, 690 S.W.2d at 548. Accordingly, the burden shifted to appellants to raise a fact issue regarding their open courts provision claim. *See Yancy*, 236 S.W.3d at 782.

## C.    Open Courts Provision Violation

The Open Courts provision of the Texas Constitution may be violated by the statute of limitations if that statute causes the party to "suffer unreasonable or arbitrary denial of access to the courts." *Yancy*, 236 S.W.3d at 783; *see* TEX. CONST. art. 1 § 13. "A statute has the effect of denying access to the courts if it unreasonably abridges a plaintiff's right to obtain redress for injuries caused by the wrongful acts of another." *Yancy*, 236 S.W.3d at 783. In essence, unlike the discovery rule, "the open courts provision merely gives litigants a reasonable time to discover their injuries and file suit." *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 707 (Tex. 2014); *Yancy*, 236 S.W.3d at 784. It is the responsibility of the courts to determine what constitutes a reasonable time frame. *Tenet Hosps. Ltd.*, 445 S.W.3d at 707. "Proof of an open courts violation requires two elements: (1) a cognizable, common-law claim that is statutorily restricted, and (2) the restriction is unreasonable or arbitrary when balanced against the statute's purpose and basis." *Yancy*, 236 S.W.3d at 784 (internal citations omitted). When bringing an open courts complaint, the complaining party must show that it used due diligence in pursuit of its complaint. *Id.* "Procedurally, the party raising the open courts challenge 'must raise a

8

fact issue establishing that he did not have a reasonable opportunity to be heard.'" *Id.* (internal quotations omitted). However, for the open courts guarantee to apply, the complaining party must establish that it did not have a reasonable opportunity to discover the alleged wrong before the limitations period expired. *Shaw v. Moss*, 67 S.W.3d 836, 846–47 (Tex. 2001); *Morrison v. Chan*, 699 S.W.2d 205, 207 (Tex. 1985); *O'Reilly v. Wiseman*, 107 S.W.3d 699, 706 (Tex. App.—Austin 2003, pet. denied).

Appellants argue that Monica's pregnancy was not diagnosed by her doctor until January 29, 2001, one day after the statute of limitations expired for the first alleged negligent act. Thus, they claim that they discovered that Alex was in fact fertile on that date. However, the summary judgment evidence showed that Dr. Vitko told Monica after the vasectomy that a sperm count test showed that he was still fertile, that Monica had one post-vasectomy baby, and that appellants used condoms even after the March 1, 1999 incident where the nurse told appellants that the semen test was negative. In addition, appellants knew on January 10, 2001, that Monica's pregnancy test was positive. The evidence showed that Monica took the pregnancy test after missing her menstrual period, and that she "knew" she was pregnant at least on January 10, 2001. Under these circumstances, we conclude that the summary judgment evidence established that appellants had a reasonable opportunity to discover the injury and to bring suit against Dr. Holzman prior to the expiration of the two-year statute of limitations period.[10] *See Shaw*, 67 S.W.3d at 846–47 ("[I]t was [plaintiff's] burden to raise a fact issue demonstrating that he did not have a reasonable opportunity to discover the alleged

---

[10] We note that appellants alleged in their original petition filed on May 9, 1999, that Dr. Vitko "failed to properly perform a sterilization operation or vasectomy upon [Alex]." Thus, it appears that appellants were aware that Alex's vasectomy had not been properly performed at that time.

9

wrong before the limitations period expired so that the open courts guarantee applies."); *Morrison*, 699 S.W.2d at 207 (explaining that the plaintiff must show that it was not possible for the parties to discover the injury within the two-year period and stating that "the legislature has no power to make a remedy by due course of law contingent on an impossible condition"); *O'Reilly*, 107 S.W.3d at 706 ("[T]o establish an open-courts violation, a plaintiff must show it was impossible or exceedingly difficult to discover the wrong [within the limitations period].").

Moreover, appellants cite no authority, and we find none, to support a conclusion that when a party discovers or has a reasonable opportunity to discover the alleged wrongful act within the limitations period, the party may file a medical malpractice claim outside of the limitations period by relying on the open courts provision of the Texas Constitution. Appellants cite *Gagnier v. Wichelhaus*, as supporting a conclusion that "[a] reasonable time is given in order to allow a claimant to investigate, prepare and file suit after discovering his injury." 17 S.W.3d 739, 745 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). However, in that case, the patient discovered the alleged medical negligence after the statute of limitations had expired. *See id.* Thus, that case is distinguishable from the facts of this case and is inapplicable because here, appellant had a reasonable opportunity to discover the alleged negligence before the limitations period expired. *See also Shah v. Moss*, 67 S.W.3d 836, 846 (Tex. 2001) (stating that it was claimant's "burden to raise a fact issue demonstrating that he *did not have a reasonable opportunity to discover the alleged wrong before the limitations period expired* so that the open courts guarantee applies) (emphasis added); *DeRuy v. Garza*, 995 S.W.2d 748 (Tex. App.—San Antonio 1999, no pet.) ("Since DeRuy did not discover that

she had a cause of action until after limitations had run, we agree that the statute of limitations is unconstitutional in this case."). Moreover, the Texas Supreme Court has stated, "The reasonable-time rule is a court-made standard, which has heretofore been applied only in a limited number of cases involving adult *plaintiffs who*, because of the nature of their claim, *did not have a reasonable opportunity to discover their injuries and bring suit within a prescribed limitations period.*" *Weiner v. Wasson*, 900 S.W.2d 316, 321 (Tex. 1995) (emphasis added); *Ericson v. Roberts*, 910 S.W.2d 608, 613 (Tex. App.—Tyler 1995, no writ) ("To have a valid argument that Section 10.01 was unconstitutional, the Ericsons would have had to allege that they were not able to discover Mr. Ericson's injuries within two years from the date of the operation. Thus, the Ericsons' challenge to the constitutionality of the statute is without merit."); *see also O'Conner v. Bollinger*, No. 12–12–00351–CV, 2013 WL 4769264, at *2 (Tex. App.—Tyler 2013, no pet.) (mem. op.) ("[T]he law does not ask for the date of actual knowledge or of a good guess. The open courts provision protects [the claimant] from a statute that cuts off his right to sue before he has a reasonable opportunity to discover the wrong.").

Accordingly, we conclude that because appellants had a reasonable opportunity to discover Dr. Holzman's alleged negligence prior to the expiration of the statute of limitations, the open courts provision of the Texas Constitution does not apply. *See Shaw*, 67 S.W.3d at 846–47; *Morrison*, 699 S.W.2d at 207; *O'Reilly*, 107 S.W.3d at 706. Therefore, appellants did not meet their summary judgment burden regarding their open courts violation claim. Accordingly, the trial court properly granted the summary judgment on the basis that appellants' cause of action against Dr. Holzman was filed outside the statute of limitations. We overrule appellants' first issue.

11

**D.    Relation-back Doctrine for "Wrongful Acts Occurring in July 1999, and October 2000, or November 2000"**

By a first sub-issue to their first issue, appellants contend that their "[n]egligence claim for wrongful acts occurring in July 1999, and October 2000, or November 2000 are not barred by [s]ection 10.01 of 4590i." Appellants allege that Dr. Holzman committed negligence per se because she "fail[ed] to provide a complete set of Alex's medical records in July 1999, and late October 2000 or November 2000, when she had a duty to make the disclosure after request by Alex and Monica for the records and for producing an incomplete set of Alex's medical records in July 1999 and November 2000 when she had a duty to provide all of the records was timely." Appellants also assert that they have a fraud claim stemming from a July 1999 incident where Dr. Holzman allegedly falsely represented to appellants that she had provided to Alex a complete set of his medical records. Appellants attempt to bootstrap this claim to their petition filed on August 9, 2001, which we have already found to be untimely pursuant to the statute of limitations.

When appellants filed their August 9, 2001 petition, they did not allege that Dr. Holzman committed negligence by failing to provide Alex with a complete set of his medical records. Instead, appellants added this claim when they amended their petition on July 23, 2012, twelve years after Dr. Holzman allegedly failed to provide the records to Alex. Appellants do not explain how the trial court erred in dismissing a claim that was filed twelve years after the act occurred. They merely make a bare assertion, without any legal analysis, that "[t]he addition of the negligence claims in a subsequent pleading is timely under the relation-back doctrine."

12

The relation back doctrine is set out in section 16.068 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.068 (West, Westlaw through 2013 3d C.S.). Section 16.068 provides:

> If a filed pleading relates to a cause of action, cross action, counter-claim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

*Id.* Thus, the statute of limitations does not apply, if the party files a supplemental or amended pleading that is not "wholly based on a new, distinct, or different transaction or occurrence." *Id.*; *Guajardo v. Liberty Mut. Ins. Co.*, 831 S.W.2d 358, 364 (Tex. App.—Corpus Christi 1992, writ denied) ("The test is if the amended pleading does not allege a wholly new, distinct, or different transaction, then it relates back to the original filing, and is not subject to a limitations defense.").

Here, however, the August 9, 2001 pleading where appellants allege the relation back doctrine applies is subject to a statute of limitations defense. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.068. Moreover, appellants do not provide any explanation as to how the facts of their "failure to provide complete medical records" claim relates to their claim that Dr. Holzman misdiagnosed Alex as sterile as alleged in their August 9, 2001 pleading. *See* TEX. R. APP. P. 38.1(i). Finally, although appellants invoked the relation back doctrine in their response to Dr. Holzman's motion for traditional summary judgment, they did not explain how that doctrine applies to the facts of this case. They only stated the following, "The addition of the claim in a subsequent pleading is timely under the relation-back doctrine," without any explanation or analysis. Aside from the assertion that the relation back doctrine applied, appellants made no other arguments and provided no

13

legal analysis of that claim. Appellants neither specifically stated that the claim for the alleged "failure to provide the complete medical records" involved the same operative facts as any other cause of action asserted in their August 9, 2001 pleading nor explained which operative facts were the same. *See Villasan v. O'Rourke*, 166 S.W.3d 752, 765 (Tex. App.—Beaumont 2005, pet. denied) (explaining that it would be the claimants' burden to plead and to produce evidence to show that the relation back doctrine applies).

Therefore, because appellants failed to point to any evidence in response to appellees' motion for summary judgment that the relation back doctrine applied and the trial court could have found that appellants' July 23, 2012 amended petition was filed after the statute of limitations for appellants' negligence claims had passed, it properly granted summary judgment in favor of Dr. Holzman on that basis. *See id*. Accordingly, we may not reverse the summary judgment on this ground. We overrule appellants' first sub-issue.

**E.     Fraud for "Misrepresenting the Nature of the Outcome of the Vasectomy"**

By a second sub-issue to their first issue, appellants contend that their fraud claim that Dr. Holzman misrepresented the "nature of the outcome of the vasectomy" is not barred by the two-year statute of limitations. In her motion for summary judgment, Dr. Holzman claimed that appellants' fraud claim was an attempt to re-cast their medical malpractice claim in order to avoid limitations. On appeal, appellants do not provide any legal analysis concerning why their fraud claim is not an impermissible re-cast of their health care claim. Instead, they state that "[t]he facts show otherwise" and then re-summarize the facts they allege support their fraud claim.

14

"Whether the action is a health care liability claim is a question of law, which this court reviews de novo." *Gomez v. Matey*, 55 S.W.3d 732, 735 & n. 2 (Tex. App.—Corpus Christi 2001, no pet.). Therefore, without substantive legal analysis concerning why appellants' fraud claim is not an impermissible re-cast of their medical malpractice claim based on exactly the same facts, we are unable to reverse the trial court's granting of summary judgment in this case. *See Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.) ("An appellate court has no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error."); *Plummer v. Reeves*, 93 S.W.3d 930, 931 (Tex. App.—Amarillo 2003, pet. denied) ("[A]s judges, we are to be neutral and unbiased adjudicators of the dispute before us. Our being placed in the position of conducting research to find authority supporting legal propositions uttered by a litigant when the litigant has opted not to search for same runs afoul of that ideal, however. Under that circumstance, we are no longer unbiased, but rather become an advocate for the party."); *Leyva v. Leyva*, 960 S.W.2d 732, 734 (Tex. App.—El Paso 1997, no writ) (explaining that the failure to cite legal authority or provide substantive analysis of an issue waives the complaint). We overrule appellants' second sub-issue.[11]

## F. Fraudulent Concealment

By their third sub-issue to their first issue, appellants contend that the trial court should not have granted summary judgment because they established fraudulent

---

[11] Because we have concluded that appellants' claims against Dr. Holzman are barred by the statute of limitations, we need not address appellants' issues regarding whether a fact issue exists that Dr. Holzman breached the standard of care and her negligence was the proximate cause of appellants' damages. *See* TEX. R. APP. P. 47.4.

concealment, which tolls the statute of limitations in a medical malpractice cause of action. Specifically, appellants claim that Dr. Holzman failed to provide a complete set of Alex's medical records when requested on May 27, 1999 and that in response to that request, Dr. Holzman "represented by affidavit that Alex's records were attached which proved to be false."

"[When] the defense of the statute of limitations is established by the record as a matter of law [as here], and [the] petitioners are relying on [the affirmative defense of] fraudulent concealment to avoid that defense[, it is] their burden . . . to come forward with proof raising an issue of fact with respect to fraudulent concealment." *Nichols v. Smith*, 507 S.W.2d 518, 521 (Tex. 1974). The elements of fraudulent concealment are: (1) the existence of a tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception. *Markwardt v. Tex. Indus., Inc.*, 325 S.W.3d 876, 895 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Vial v. Gas Solutions, Ltd.*, 187 S.W.3d 220, 229 (Tex. App—-Texarkana 2006, no pet.); *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 439 (Tex. App.—Fort Worth 1997, pet. denied)). However, in their response to Dr. Holzman's motion for traditional summary judgment regarding their fraudulent concealment claim, appellants only stated the following:

> Dr. Holzman fraudulently concealed the nature and outcome of the vasectomy, the Central Diagnostic Clinic Lab test result that Alex was fertile, Alex's medical records and her own negligence to the detriment of Alex and Monica. Such deception was not discovered until Alex and Monica became aware of Alex's fertility until January 29, 2001, when Dr. Tom Hausle diagnosed Monica as being pregnant.

In their response, appellants neither stated the elements of fraudulent concealment nor provided citation to any summary judgment evidence that supports any of the

16

fraudulent concealment elements. Moreover, within their response, appellants did not quote or otherwise point out to the trial court the summary judgment evidence they relied on to support a conclusion that a fact issue exists regarding any of the fraudulent concealment elements. *See Nichols v. Smith*, 489 S.W.2d 719, 723–24 (Tex. Civ. App.—Fort Worth 1973) *aff'd*, 507 S.W.2d 518 (Tex. 1974) ("When the defendant established as a matter of law by evidence at the summary judgment hearing that limitations had run on the plaintiff's case, he became entitled to the summary judgment that was granted him unless the plaintiff came forward at such hearing with legitimate evidence showing at least prima facie the existence of all of the elements of the doctrine of fraudulent concealment that the plaintiff had pleaded affirmatively in avoidance of limitations."). Finally, appellants made no claim in their response that a tort existed, that Dr. Holzman knew of the existence of her alleged tort, or that they relied on her alleged deception; and, they did not point to any evidence to support a conclusion that a fact issue existed on those elements of fraudulent concealment. *See Markwardt*, 325 S.W.3d at 895; *Nichols*, 489 S.W.2d at 723–24.

Although appellants generally cited Alex's affidavit, they did not specify which elements of fraudulent concealment Alex's affidavit addressed. In this case, without more specific guidance from appellants, the trial court was not required to determine whether the facts stated in Alex's affidavit raised a fact issue regarding fraudulent concealment. *See Id.* ("'There is one situation where the opponent of a summary judgment motion must come forward himself to raise a fact issue by proof rather than allegation, the movant having presented no proof on the issue, and that is to support the non-movant's own affirmative defense.'") (quoting *Torres v. W. Cas. & Surety Co.*, 457 S.W.2d 50, 53 (Tex.

17

1970)); *see also Rogers v. Ricane Enters. Inc.*, 772 S.W.2d 76, 81 (Tex.1989) (holding that general references to a voluminous record do not direct trial courts and parties to evidence on which the movant relies); *Guthrie v. Suiter*, 934 S.W.2d 820, 826 (Tex. App.—Houston [1st Dist.] 1996, no writ) (stating a trial court does not abuse its discretion when it does not consider summary judgment proof to which it was not directed).

The trial court had no basis, without any legal analysis of the summary judgment evidence, to support a conclusion that the facts mentioned by appellants, which were included in Alex's affidavit, applied to the elements of fraudulent concealment. *Arredondo v. Rodriguez*, 198 S.W.3d 236, 238–39 (Tex. App.—San Antonio 2006, no pet.) ("Attaching entire documents and depositions to a motion for summary judgment or to a response and referencing them only generally does not relieve the party of pointing out to the trial court where in the documents the issues set forth in the motion or response are raised."). In addition, we may not rely on appellants' brief to support a reversal of the trial court's grant of summary judgment.[12] *See Mercier v. Sw. Bell Yellow Pages, Inc.*, 214 S.W.3d 770, 774 (Tex. App.—Corpus Christi 2007, no pet.) ("The supreme court has made it clear, that, rigorous as it may seem, rule 166a (c) must be applied as written and we are not allowed to review the summary judgment evidence to determine whether

---

[12] On appeal, appellants argue that they established each element of their fraudulent concealment claim with, among other things, the following evidence: (1) a tort of negligence existed because Dr. Holzman allegedly misdiagnosed Alex as sterile; (2) Dr. Holzman "admitted receiving [a] lab report with the result of the semen analysis" and that her "interpretation of the result was that there were sperm present and Alex was fertile"; (3) "Dr. Holzman breached the standard of care by not notifying Alex of the sperm test result, having him produce another specimen, and telling him that he was fertile"; (4) "Dr. Holzman had the responsibility to convey to Alex the correct test results"; (5) "[t]he standard of care was breached by Dr. Holzman's nurse telling Alex that the sperm test was negative, implying that he was sterile"; (6) "Dr. Holzman denied that it was her nurse who conveyed the results"; (7) "Dr. Holzman's own position then is that she never conveyed the semen test to Alex"; (8) "Dr. Holzman was aware that her conduct was below the standard of care" and (9) "[t]here was deception on Dr. Holzman's part [because] Dr. Holzman admitted she never revealed to Alex the sperm test result [and] failed to provide a complete set of medical records to Alex until May 2003." However, as stated above, appellants did not make these arguments below.

grounds (or 'issues' when, as in the present case, referring to a non-movant's response) are expressly presented; instead, they must be stated in the written response."). Accordingly, we overrule appellants' third sub-issue.

## G.    Non-MLIIA Claims

By a fourth sub-issue to their first issue, appellants state,

> As to the non-MLIIA claims, the discovery rule applied.  Alex and Monica did not discover the injury or could have discovered the nature of the injury until January 29, 2001, when Dr. Hausle diagnosed Monica as being pregnant.  The discovery rule applied in *Hays*, 488 at 414 (Tex. 1973) (a vasectomy case).  Suit was timely filed after discovery of the injury.

This is the extent of appellant's argument.  We conclude that this issue is inadequately briefed, and we overrule it.  *See* TEX. R. APP. P. 38.1(i).

## H.    Punitive Damages

By a fifth sub-issue to their first issue, appellants state, "In her Traditional Motion for Summary Judgment, Dr. Holzman claimed that Alex and Monica are not entitled to punitive damages because Dr. Holzman has negated any ordinary negligence theory. Since she failed to negate the negligence claims as shown herein, Dr. Holzman's argument failed."  This is the extent of appellants' argument; thus it is inadequately briefed.  Nonetheless, because we have concluded that the trial court properly granted Dr. Holzman's motion for traditional summary judgment on all of appellant's claims, we need not address this issue as it is not dispositive of this appeal.  *See id.* R. 47.4.

### III.    OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

By their second issue, appellants argue that the trial court erred in sustaining Dr. Holzman's objections to their evidence.  Specifically, appellants argue that "the trial court

19

had no discretion to consider and sustain Dr. Holzman's objection filed after the summary judgment hearing."

"Summary judgment evidence must be admissible under the rules of evidence." *Doncaster v. Hernaiz*, 161 S.W.3d 594, 601 (Tex. App.—San Antonio 2005, no pet.). "Inclusion or exclusion of summary judgment evidence is a matter committed to the trial court's discretion. We review a trial court's ruling sustaining or overruling objections to summary judgment evidence for an abuse of that discretion." *All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 528 (Tex. App.—Fort Worth 2009, pet. denied). "To warrant reversal, the appellant must show that the trial court's erroneous admission or exclusion of evidence was harmful—that it was calculated to cause and probably did cause the rendition of an improper judgment." *Doncaster*, 161 S.W.3d at 601 ("[E]rror on questions of evidence is generally not reversible unless the appellant can show that the whole case turns on the particular evidence admitted or excluded."); *Steinkamp v. Caremark*, 3 S.W.3d 191, 197 (Tex. App.—El Paso 1999, pet. denied) ("Because we find that the trial court erred in striking Steinkamp's summary judgment evidence concerning Vygon's summary judgment evidence and Dr. Castillo's deposition testimony, we must next determine whether such error was harmless.").

Much of the evidence that appellants complain that the trial court excluded relate to whether Dr. Holzman committed medical malpractice or whether fraudulent concealment occurred.[13] We have already concluded that appellants' suit is barred by

---

[13] On page 13 of their brief, appellants complain that the trial court excluded excerpts from Alex's April 25, 2007 deposition. However, the portion of this voluminous record they cite is redacted, and they do not explain how exclusion of the excerpts was harmful. The same is true of their complaint that portions of Monica's testimony were excluded. Subsequently, on pages 17–18 of their brief, appellants stated that they redacted the portions of the deposition excerpts themselves. We are unable to determine appellants' argument regarding these exhibits. *See* TEX. R. APP. P. 38.1(i). Thus, they have not met their appellate burden of establishing that exclusion of this evidence caused the rendition of an improper judgment. *See*

20

the statute of limitations and that they did not address all elements of their fraudulent concealment claim. Thus, no harm has been shown regarding exclusion of such evidence. Appellants also cite excluded evidence that they claim supports the merits of their open courts argument. However, we have concluded that the open courts provision does not apply to the facts of this case. So no harm has been shown in excluding such evidence. Moreover, appellants make no effort to explain the significance of the cited evidence they complain was excluded.[14] We cannot conclude that the error, if any, in excluding the complained-of evidence was harmful because the exclusion of the complained-of evidence did not cause the rendition of an improper judgment in this case. *See Doncaster*, 161 S.W.3d at 601; *Steinkamp*, 3 S.W.3d at 197. We overrule appellants' second issue.

## IV. SANCTIONS

In their section entitled "Issues Presented," appellants state that their third issue is that the trial court erred in denying their motion for sanctions against Dr. Holzman and her attorney. In the sanctions section of their brief, however, appellants state that they were denied their right to an "evidentiary hearing" on their motion for sanctions. Appellants cite no authority and provide no legal analysis regarding a denial of a motion for sanctions. Instead, they limit their discussion to whether the trial court erred in

---

*Doncaster v. Hernaiz*, 161 S.W.3d 594, 601 (Tex. App.—San Antonio 2005, no pet.); *Steinkamp v. Caremark*, 3 S.W.3d 191, 197 (Tex. App.—El Paso 1999, pet. denied).

[14] Appellants complain that the trial court excluded portions of Alex's affidavit, Exhibit 16, Exhibit 22-B, and Exhibit 22-E. Appellants, however, do not cite where in the record we may find Exhibit 16, and this is a voluminous record with over 1400 pages. Exhibit 22-B is a letter to Dr. Holzman requesting Alex's medical records. Appellants direct us to Exhibit 22-E on page 558 of the Clerk's Record. Page 558 of the Clerk's record is a facsimile cover sheet, marked "Exhibit 'E'" showing that appellants' attorneys faxed a copy of a letter requesting Alex's medical records to a "Dr. McMillan." Appellants have not explained the significance of these documents to their case. *See* TEX. R. APP. P. 38.1(i). Thus, no harm is shown.

21

allegedly not "completing" a sanctions hearing. Thus, we conclude that appellants' argument is limited to whether the trial court should have "completed" the sanctions hearing, and we will not address whether the trial court erred in denying the motion for sanctions on any other basis.

Specifically, appellants argue that "[r]ule 13 requires the trial court to hold an evidentiary hearing. . . . The trial court abused its discretion in not holding an evidentiary hearing on Alex and Monica's Motion" for sanctions.[15] Appellants state that the trial court began to address their motion for sanctions at an oral hearing, but claim that the trial court then "refused to provide a date to conclude the hearing." In response, Dr. Holzman argues that an "evidentiary hearing" is not required under rule 13 when the trial court denies a motion for sanctions.

In *Cire v. Cummings*, the Texas Supreme Court stated:

> Rule 215.3, which authorizes a trial court to impose sanctions, does require "notice and hearing" before sanctions are imposed. However, nothing in the rule indicates that this must be an "oral hearing." A "hearing" does not necessarily contemplate a personal appearance before the court or an oral presentation to the court. *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex.1998) (oral hearing not required on motion for summary judgment); *see also Gulf Coast Inv. Corp. v. Nasa 1 Bus. Ctr.*, 754 S.W.2d 152, 153 (Tex.1988) ("[N]ot every hearing called for under every rule of civil procedure, however, necessarily requires an oral hearing.").

134 S.W.3d 835, 843–44 (Tex. 2004). The supreme court then held that the trial court did not err in ordering that the party pay "a $250 sanction for filing frivolous objections to discovery without an oral hearing." *Id.*

---

[15] This is the extent of appellant's argument.

22

The supreme court analyzed the issue under rule 215.3; however, we find the reasoning analogous to a sanction under rule 13. *See* TEX. R. CIV. P. 13. We also find the Texas Supreme Court's reasoning in *Gulf Coast* instructive. 754 S.W.2d at 153. In that case, the Texas Supreme Court explained that the language of rule 165a of the Texas Rules of Civil Procedure, requires an oral hearing because it stated "that the judge 'shall set a hearing on the motion as soon as practicable,' and that the court 'shall notify all parties or their attorneys of record of the *date, time and place of the hearing.*'" *Id.*

Rule 13 states, "If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after *notice and hearing*, shall impose an appropriate sanction available under Rule 215, upon the person who signed it, a represented party, or both."[16] TEX. R. CIV. P. 13 (emphasis added). Like rule 215.3,

---

[16] Rule 215 states the following:

Failure to Comply with Order or with Discovery Request

(a) Sanctions by Court in District Where Deposition is Taken. If a deponent fails to appear or to be sworn or to answer a question after being directed to do so by a district court in the district in which the deposition is being taken, the failure may be considered a contempt of that court.

(b) Sanctions by Court in Which Action is Pending. If a party or an officer, director, or managing agent of a party or a person designated under Rules 199.2(b)(1) or 200.1(b) to testify on behalf of a party fails to comply with proper discovery requests or to obey an order to provide or permit discovery, including an order made under Rules 2041 or 215.1, the court in which the action is pending may, after notice and hearing, make such orders in regard to the failure as are just, and among others the following:

(1) an order disallowing any further discovery of any kind or of a particular kind by the disobedient party;

(2) an order charging all or any portion of the expenses of discovery or taxable court costs or both against the disobedient party or the attorney advising him;

(3) an order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(4) an order refusing to allow the disobedient party to support or

23

rule 13 also requires notice and hearing prior to a trial court imposing sanctions.  *See id.* R.13, 215.3.  And, unlike rule 165a, rule 13 does not include the language that the supreme court found indicated that an oral hearing is required—rule 13 does not state that the judge shall notify the parties of the date, time, and place of the hearing.  *See id.* R. 13, 165a, 215.3.  Because a hearing does not contemplate a personal appearance before the court or an oral presentation to the court and we find nothing in rule 13 that indicates that the trial court must conduct an "oral hearing," we cannot conclude that the trial court failed to satisfy rule 13's requirement by not conducting an oral hearing in this case.[17]  Moreover, the trial court stated in its order denying appellants' motion for

oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

   (5) an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing with or without prejudice the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party;

   (6) in lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

   (7) when a party has failed to comply with an order under Rule 204 requiring him to appear or produce another for examination, such orders as are listed in paragraphs (1), (2), (3), (4) or (5) of this subdivision, unless the person failing to comply shows that he is unable to appear or to produce such person for examination.

   (8) In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him, or both, to pay, at such time as ordered by the court, the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. Such an order shall be subject to review on appeal from the final judgment.

(c) Sanction Against Nonparty For Violation of Rules 196.7 or 205.3. If a nonparty fails to comply with an order under Rules 196.7 or 205.3, the court which made the order may treat the failure to obey as contempt of court.

[17] Moreover, rule 13 states that the notice and hearing must occur prior to the imposition of sanctions.  *See* TEX. R. CIV. P. 13.  It does not explicitly state that the trial court must conduct a hearing prior to denying a motion for sanctions.  *See id.*  Nonetheless, we will assume without deciding that appellants were equally entitled to a hearing under rule 13.  *But see Breault v. Psarovarkas*, No. 01-01-

24

sanctions that it considered appellants' motion, Dr. Holzman's response, the pleadings, the arguments of counsel and the record in denying the motion for sanctions. Thus, the trial court appears to have complied with rule 13 by holding a hearing on whether to grant appellants' motion for sanctions.[18] Accordingly, we cannot conclude that the trial court abused its discretion in this case, and we overrule appellants' third issue.

## V.    CONCLUSION

We affirm the trial court's judgment.[19]

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
28th day of May, 2015.

---

00122-CV, 2003 WL 876651, at *6 (Tex. App.—Houston [1st Dist.] Feb. 28, 2003, pet. denied) (mem. op) ("Thus, this rule [13] requires a court to hold a hearing prior to applying sanctions. The rule does not require a hearing prior to denying sanctions.").

[18] Rule 13 does not state that an "evidentiary hearing" is required, as appellants argue. *See* TEX. R. CIV. P. 13; *see also Skinner v. Levine*, No. 04-03-00354-CV, 2005 WL 541341, at *3 (Tex. App.—San Antonio Mar. 9, 2005, ) (mem. op.) ("Moreover, neither Chapter 10 nor Rule 13 requires the trial court to hold an evidentiary hearing before denying a motion for sanctions. Chapter 10 requires the court to give notice and an opportunity to respond to the "party who is the subject of a motion for sanctions" but contains no hearing requirement."). However, it appears that the trial court considered evidence when it made its ruling because at a hearing, the trial court indicated that testimony by Alex would be "[f]or the purpose of the Designation of Third-Party and Motion for Sanctions" and appellants attached exhibits to their motion for sanctions for the trial court's consideration.

[19] Because we have affirmed the summary judgment on other grounds, we need not address Dr. Holzman's cross-issue concerning exclusion of the evidence as it is not dispositive of this appeal. *See* Tex. R. App. P. 47.4.